# Kreiser's Appeal.

1. The wife of a testator was present at the execution of his will, and made fully acquainted with its contents; she at the same time endorsed on it a writing signed by her with her seal in the presence of the witnesses to the will, ratifying it and accepting its provisions in lieu of her dower, and renouncing all claims in his estate to which she might be entitled at common law.  The writing was void at law.  *Per* PEARSON, P. J., *adopted by the Supreme Court.*

2. It would not be binding in equity unless shown to be made with her full knowledge of the value of the interests she was receiving and giving up, and that there was no inequality.  *Id.*

3. Equity leaves her to her choice of her rights by law, or those under the will; and she would not be bound by such election made during coverture.  *Id.*

4. The will was read in her hearing on the day of the funeral, she said

[Kreiser's Appeal.]

she was satisfied with it, and a few days afterwards accepted chattels bequeathed to her. This was not a binding election. *Id.*

5. A party is not bound to make an election until all the circumstances and the state, condition and value of the fund are known. *Id.*

6. Anderson's Appeal, 12 Casey 476; Dickinson *v.* Dickinson, 11 P. F. Smith 401, adopted.

May 19th 1871. Before AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Orphans' Court of *Lebanon county:* No. 63, to May Term 1871: In the distribution of the estate of Jacob Kreiser, deceased, decreeing to Elizabeth Kreiser, the widow of. the decedent, her share of his estate under the intestate laws instead of the provisions for her in his will.

The testator died about the 24th of December 1867, leaving his above-named widow, a daughter Caroline, her child; also six children by a former marriage, to wit: Daniel Kreiser, Sarah Petry, Elizabeth Carus, Jacob Kreiser, Lydia Hay and Polly Miller.

He left a will dated July 22d 1867, as follows:—

* * * "Further, it is my will and I do order and direct, that my present wife, Elizabeth, shall have for her use as long as she lives and remains my widow, and not longer, my tracts of about 13 acres of land, with all the buildings and appertenances, situate, &c., as also my said wife, Elizabeth, shall have for her use as long as she lives and remains my widow, and not longer, my tract of about two acres of woodland, situate, &c. As also, she, my said wife Elizabeth, shall have for her use as long as she lives and remains my widow, and not longer, all my house and kitchen furniture, and loose stock in my house, and articles in my barn and in the yard; further, it is my will that at and immediately after the death of my said wife Elizabeth, or after she did join into another marriage, all that the aforesaid tracts of about thirteen acres of land with all the buildings and appertenances, and the said tract of about two acres of woodland, and the said house and kitchen furniture, loose stock and articles in my barn and in the yard, shall become the property *of my and my* said wife Elizabeth her child Caroline, but if it should happen that she, my said child Caroline, should die before the death of her mother [my present wife Elizabeth] or if she, the said Caroline, should die and having no child or children at the time of the said Caroline her death in either of such cases, the said tracts of about 13 acres of land, two acres of woodland, house and kitchen furniture, stock articles shall become the absolute property of my other hereafter-named children and legatees hereafter named in this my will, after the death of said Elizabeth or after her other marriage.

"Further, it is my will and I do order and direct and do give and bequeath unto my other children, all the proceeds of all my bonds, notes, judgments, cash money bills, accounts, income and

outstandings, &c.,"—designating each of his other children by name, each to take one-sixth. Appended to the will was the following :—

"KNOW YE ALL MEN that I, Elizabeth Kreiser, was fully acquainted with the contents of the foregoing will and testament by my said husband, Jacob Kreiser. Now know ye That I do hereby ratify, and accept of the provisions contained in said will in lieu of my dower or right of common law, &c., hereby renouncing all claims and suits for dower in said estate which I might in common law, &c., be entitled.

"IN WITNESS WHEREOF I have hereunto set my hand and seal the 22d day of July, A. D. 1867.

her<br>
ELIZABETH ⋈ KREISER. [SEAL.]<br>
mark

" *Witnesses present at the signing and sealing hereof* :

JACOB SHNOTTERLY,<br>
GIDEON SHNOTTERLY."

These witnesses were also witnesses to the will.

On the 24th of January 1868, the widow gave notice to the executor that she refused the provisions made for her in the will, and elected to take the $300 under the exemption law, her share of the personalty and her dower in the real estate under the intestate laws. The testator's personal property, according to the inventory, amounted to $8301.41, besides the chattels bequeathed to the widow, appraised at $483. The account of the executor as confirmed, showed a balance in his hands of $4225.46, which was referred to James W. Ebur, Esq., for distribution.

Before the auditor, the widow claimed in accordance with her notice to the executor. At the audit, the scrivener who drew the will testified, that the testator and his wife came to his office on or about July 22d 1867, the time fixed for drawing the will; that after interrogating them as to how it should be drawn, he wrote the will in their presence, read it to them, and after explaining it in German, and the testator having told her that all his property, both real and personal, viz. all his household and loose goods (except the notes and bonds, the amount of which he stated), as also his two tracts of land, were to be hers as long as she lived and remained his widow, and thereafter to their daughter Caroline; she in reply thereto said it was all right, and that she was satisfied, and then signed the renunciation, which was also explained to her in German. That after the funeral the witness read the will to her and the children, and she with them said it was all right and they were satisfied. That on January 16th 1868, at the appraisement, she then and there stated that she would take under the will, that she wanted a home to live in and was satisfied.

A son of the scrivener testified that he heard his father explain

[Kreiser's Appeal.]

the will in German to the widow, and inquire whether she understood it; she answered that she did and that it was all right.

Bernhard Kreiser testified that she said that her husband had made a will, that she heard it read and was satisfied. Others testified in the same way.

There was evidence also of the value of the real estate devised to Caroline, and that the widow had taken on the day of the appraisement, the chattels bequeathed to her by the will.

The auditor in his report, after stating the facts, said:—

* * * "Elizabeth Kreiser (the widow) then under a full knowledge of all the circumstances, having been fully informed of the value of what she was to choose between, and in pursuance of the evident understanding between her and the testator, thus elected to take under the will, did so when signed, and ratified that election by signing the renunciation and in expressing her approval by being satisfied with what she considered her interest, viz. : the securing a home for herself and child, worth about $2000, whereon she no doubt could make a living for herself and child as contemplated by the testator.

" She therefore having thus elected to take and accept, cannot at an aftertime decline, and avail herself of the privilege of the law, the right to which she has forfeited in consequence of her having already taken under the will.

" After a careful consideration of the whole subject-matter, I can arrive at no other conclusion than this, viz. : that the testator and his wife having consulted together as to how the will was to be made and the estate settled upon her and his children, and the will being drawn under their joint direction, was a postnuptial or family settlement which the widow confirmed in writing, and ratified after the death of the testator by electing to take the articles and property given to her by the will, and stating that she was satisfied with the will, constituting an election, and therefore binding on her."

The auditor awarded her the $300, and distributed the balance of the personal estate amongst the six children to whom it was bequeathed.

The widow filed exceptions to the report. It was set aside by the Orphans' Court, Pearson, P. J., delivering the following opinion:—

" On the 22d day of July 1867, Jacob Kreiser executed his will in due form, devising to his wife his farm consisting of thirteen acres, and two acres of woodland; also bequeathing to her his household and kitchen furniture, loose stock in his house, and articles in the barn and yard, all during life or widowhood, and no longer, with a limitation over as to both species of property to his daughter Caroline on the death or marriage of her mother. In case of her death during the lifetime of her mother, or without leaving children, the remainder over to the other children of the

[Kreiser's Appeal.]

testator by name. The wife of Kreiser was present at the execution of the will, declared in writing that she was well acquainted with its contents, ratified and accepted its provisions in lieu of her *dower or right of common law,* and renouncing all claims for *dower* in said estate to which she might be *entitled at common law.* This writing is endorsed on the will, and executed under her seal in presence of the same two persons who witnessed the will. The first question presented to the court relates to the validity and binding effect of this writing. It is certainly void at law, and cannot be sustained as a legal instrument against a feme covert. She cannot bind herself in law by any such method. She had no one with whom to contract: not with her husband, for they are, legally speaking, one person; besides she is presumed to be under his control and coercion. She would have no protection whatever if an instrument of this kind could be enforced against her. She could always be controlled by love or fear, overawed by threats, or cajoled by promises. She certainly did not contract with the legatees; they were not parties. The will was not binding on the husband; he could change it the next day: why then should she alone be bound, and her husband loose? If she could thus release her interest in his goods she could in his lands, and thereby the safeguard of a separate examination by a competent and disinterested officer be dispensed with and set at nought. Is this arrangement binding in equity? Would it be enforced by a chancellor? We answer no, unless it could be shown that it was made by the feme covert with full knowledge of all the facts—the value of the property she was receiving, and the interests she was giving up. Besides, if there was any inequality equity would not bind her. Being under legal disability, the bargain must be clearly for her benefit—at least not to her disadvantage, or chancery would leave the other parties in interest to their remedy at law.

" The inequality in the bequests is not very glaring, yet there are some features in those to the wife which render them unequal. She is given an estate in both the land and goods during widowhood only, has not even an untrammelled life estate. She is by law entitled to the absolute ownership in one-third of the personal property, after deducting three hundred dollars for her own use, which the devisees claim she has waived by her agreement, and also to the use of one-third of the real estate during life, whether she marries again or not. It is said that the land will rent for $150 a year, and the effects appraised for the widow under the will amount to $483, whilst the other part of the personalty as shown by the settlement is $4255.46. It is also in proof that the land would not support this woman and her child, either by her occupancy and cultivation, or renting it out. The Act of Assembly gives the widow a clear right of choice whether to take under the will or claim her distributive share. The effort

here is to restrict her by the writing on the will, signed during coverture. Equity would leave her to the choice conferred by law, and the rights given up are the most desirable. It is said, however, that she obtains an advantage to her child by this arrangement of the will. We cannot look to that in adjusting her equities. Chancery will not oblige her to sacrifice her interest to promote that of her child. The land cannot come into possession until after her death or marriage, and in the meantime if she declines to accept the testamentary provisions, the heirs and herself will hold it together, she taking one-third, they two-thirds of the rent.

"This election made at the time the will was executed—during coverture, in presence of the husband—we consider of no moment whatever. The party was then incompetent to make it: for an infant, feme covert, or a lunatic will not be bound by an election: Story Eq. Jur. § 1097. Her contract is void at law, and equity follows the law: Story Eq. Jur. § 248. A feme covert is not bound by an exchange of land made by her husband, though she declared herself pleased: 6 Barr 416. Equal partition may be binding on the wife, as a family arrangement, yet if not equal and fully complied with, it is not binding: 12 Wright 345, 367, 50.

"It is said that this agreement of the wife is binding as a post-nuptial contract and family arrangement. We are aware that equity lends its aid to carry out and enforce such arrangements when entered into for the peace of families where contests have arisen or are likely to arise; but we look upon this as an ordinary contract between husband and wife, in which the one party, who is presumed to be under coercion, agrees to bind herself, whilst the other remains free—can revoke the will at pleasure. There is no equality, and consequently no equity in such a postnuptial settlement, which after all is nothing more or less than a bargain between husband and wife. Our books of reports present many cases of obligations given to the wife by the husband being enforced against his representatives after his death, and also of loans of money by her to him, but we are not aware of any case where the wife's agreement to pay money to the husband, or borrow it from him, has been enforced in Pennsylvania, either in the lifetime, or after the death of the parties, or either of them. The doctrine of estoppel is invoked in the present case, and it is shown that both infants and feme coverts may be estopped by their acts, or silence when it was their duty to speak. Lord Coke says estoppels are odious in law, because they stop the mouth from speaking the truth. But we know that they are often used and sustained in equity—as where a feme covert knows that the property in which she is interested is under sale and encourages an innocent person to buy it, or stands by whilst it is being improved

or sold, and gives no notice of her claim. But to constitute such estoppel, there must be wilful silence, or misrepresentations by one having knowledge of the fact. The other party must not have the means of information, and be induced by the acts or omissions to do what he otherwise could not have done; and an injury must ensue from giving the party permission to speak the truth. It must be such an act as operates as a fraud on the purchaser, and that cannot be the case where he was acquainted with all the facts: See 10 Barr 531-2; 17 S. & R. 383. There must be an injury of which some one can properly complain. If none arises from the act or omission, there can be no estoppel: 15 Mass. 152; 6 Pick. 455; 8 Wend. 480; 5 W. & S. 284. Nothing is shown here to have been done or omitted by Jacob Kreiser in consequence of his wife signing the paper. It has been suggested that *possibly* he might otherwise have given the bonds referred to in the account to the other children during his lifetime, and have thus cut his wife out; but there is no evidence that he so threatened or attempted, and if he had it would have been an endeavor to deprive her of her distributive share without consideration. We have no right to infer that the husband intended to deprive the wife of that secured to her by the law of the land by giving away his property. Did Elizabeth Kreiser ratify her release as endorsed on the will since her husband's death? The evidence shows that the will was read the evening after the funeral, and the widow then made no objection to its provisions. A few days after an appraisement of the personal effects intended for her was made, and the articles left with her on the premises where she was living. Eight days after that time she gave notice in writing that she would not accept under the will, but claimed her dower and distributive share under the law. So careful have been the statutes of this state of the widow's rights that she cannot be called on to elect between a devise or a bequest and her dower or distributive share until after the expiration of one year from the death of the testator, when she may, by the 35th section of the Act of 1832, be cited to come into the Orphans' Court and make an election. This gives her ample time to make herself acquainted with the situation of the estate. She may even compel an exhibition of the account to enable her to choose intelligently. The general rule is that the party is not bound to make an election until all the circumstances are known, and the state, condition and value of the funds are clearly ascertained; for until that is known it is impossible to make a discriminating and deliberate choice, such as ought to be binding in reason and justice: Story Eq. Jur. § 1098. To bind the widow she must have full knowledge of the facts: 1 Ves. Jr. 335; Id. 171, 172. As a general rule a receipt for part of a legacy will not bar dower without a full know-

ledge of the situation of the estate : 1 Swanston 381.   Our own
books are to the same effect.   The election must be evidenced by
plain and unequivocal acts, with full knowledge of the situation
of the estate : 2 Yeates 302 ; 5 Harris 454.   In Anderson's Ap-
peal, 12 Casey 476, the testator died June 1st 1858.   An inven-
tory and appraisement was filed on the 21st of August following,
the account was settled on the 17th of March 1859.   On the 19th
of January 1859, a notice of non-acceptance was served on the
executor.   On the 6th of October 1858, the widow receipted for
over $2100 on account of her legacies, on the 23d of the same
month she gave another receipt for $100.   She also joined in
leasing some of the devised lands, yet all of these acts were de-
cided not to be binding, because the full situation of the estate
was unknown to her.   She was a woman of intelligence and busi-
ness capacity ; the acts of confirmation were numerous and pretty
decided.   There was ample time for examination.   In this case
we have an ignorant woman who cannot write her own name.
She did nothing decided, merely handed the executor the bonds,
and afterwards permitted them to appraise the property and
leave it on the premises.   Within eight days thereafter, and long
before the situation of the estate was known, she gave notice that
she would not acquiesce in the provisions of the will, but claim
under the intestate laws.   The principles of Anderson's Appeal
are reiterated and approved in 11 P. F. Smith 405.   The accept-
ance of a legacy and agreement to stand by a will when done in
mistake of her rights were held not to be binding in 1 Casey
468.   It is true this court decided in Light v. Light, reported in 9
Harris 407, affirming the judgment that an election might be
made *in pais*, need not be in the method prescribed in the statute,
but would be binding when the widow acted with full knowledge
of the facts.   But that case differed from this.   The widow there
gave a receipt for the personal effects, as taken under the
will, with a declaration in the paper : ' I hereby accept under
the said will.'   Prior to that she had been informed of her rights
—told she had a right to renounce, and that she could probably
get more, but was advised to accept.   That case was on the very
verge of the law, was barely sustained in the action of dower, and
possibly might have been decided otherwise had Anderson's
Appeal been in existence as a governing example.   The case of
Light v. Light has never been overruled, and may still be consid-
ered sound, but is on the outside boundary.   The widow in the
present case was extremely illiterate, conferred with no one, re-
ceived no advice, and did no act so decidedly confirmatory of the
will as in that case.   Although the auditor has found that the will
is binding on the widow, yet we cannot help thinking that it was
not so much from her subsequent acts of confirmation, as on the
endorsement on the will during coverture, which we look upon as

[Kreiser's Appeal.]

utterly void, and of no effect in law. We also consider that the verdict of a jury should be set aside by the court if the facts relied on as evidence of an election had been proved as here, and none other; and they had been found to be binding. We therefore feel ourselves constrained to set aside the report of the auditor.

"It might look like a verbal criticism, and not carrying out the intention of the writing, were we to decide that there is nothing in the endorsement on this will which would preclude the widow from claiming her distributive share out of the notes and bonds belonging to the estate of the decedent. She only relinquishes her *dower at common law*, unless we give more weight to the '&c.,' than is even given by Lord Coke. Dower at common law issued out of land alone. The distributive share of personal effects was conferred by a Pennsylvania statute of comparatively recent date. Before the Act of 1848 the husband could by his will deprive his wife of all interest in his personalty and she had no claim thereon. We prefer, however, deciding this case on the broader principles as already indicated. The report must be set aside, and the account referred back to the same auditor to make distribution according to the principles contained in this opinion, unless new evidence of acts of confirmation by the widow are introduced, so as materially to change the aspect of the case."

The auditor made a second report in accordance with the principles of Judge Pearson's opinion.

The report having been confirmed, Daniel Kreiser and the others of the six children appealed to the Supreme Court, assigning the decree of confirmation for error.

*C. P. Miller* and *J. Funck*, for appellants.—A husband may make a gift to his wife, or a settlement upon her, without the intervention of a trustee, if it be no more than a reasonable provision for her: Coates *v.* Gerlach, 8 Wright 45; Mullen *v.* Wilson, Id. 416; Pennsylvania Salt Manufacturing Company *v.* Neel, 4 P. F. Smith 17; Williams's Appeal, 11 Wright 308; Kutz's Appeal, 4 Id. 90. She may enter into an agreement of separation with her husband without the intervention of a trustee, and the money paid to her under it by the husband, becomes her property absolutely, and the husband cannot recover it after her death: McKennan *v.* Phillips, 6 Wh. 571; Hitner's Appeal, 4 P. F. Smith 111; 2 Story Eq. Jr., §§ 1368, 1372, 3, 4; Duffy *v.* The Ins. Co., 8 W. & S. 413; Moore *v.* Freeman, Bunb. 305; McConnel *v.* Carey, 12 Wright 350. The widow is estopped in equity by her acts from making her claim under the intestate laws: Commonwealth *v.* Moltz, 10 Barr 530; Calder *v.* Chapman, 2 P. F. Smith 362; Fulton *v.* Moore, 1 Casey 468; Miltimore *v.* Miltimore, 4 Wright 156;

[Kreiser's Appeal.]

Couch *v.* Sutton, 1 Grant 120; Wright *v.* Arnold, 14 B. Monroe 643; Cord on Married Women, § 246; 1 Story Equity Jur., § 385. *Femes covert* may make an election under a will, which, after being acted upon by other parties, will be upheld by courts of equity: Barrow *v.* Barrow, 4 Kay & J. 409; Savage *v.* Foster, 9 Mod. 35; Gretton *v.* Harward, 1 Swanst. 409; 2 Redfield on Wills 743; Harnsden *v.* Cheyneley, 2 Vern. 150; Evans *v.* Becknell, 6 Ves. 181–194 and note; Cory *v.* Gertcken, 2 Madd. 40; Paul *v.* Stackhouse, 2 Wright 306; Hemphill *v.* McClimans, 12 Harris 367; Light *v.* Light, 9 Id. 407.

*W. M. Derr* and *A. R. Boughter*, for appellee.—Infants, *femes covert*, or lunatics are not bound by an election: 1 Story Equity Jur., § 1097. The contract of the wife in this case is void at law, and equity follows the law: Id. § 248. Family arrangements are to be regarded with favor, but a parol partition among heirs is binding only when the partition has been agreed to by all the joint owners, and when it has been executed: McConnell *v.* Carey, 12 Wright 345. The Act of 29th March 1832 gives the widow twelve months to make her election, and before the expiration of that time she cannot be called on to say whether or not she will accept the provision made for her by the will, or take her dower in the lands or her shares of the personal estate: Anderson's Appeal, 12 Casey 476; Dickinson *v.* Dickinson, 11 P. F. Smith 401. A widow's election shall be determined only by plain and explicit acts, under full knowledge of the circumstances of the testator and her own rights: Duncan *v.* Duncan, 2 Yeates 302.

The judgment of the court was entered May 25th 1871.

PER CURIAM.—The decree of the court below is fully sustained by the decision of this court in Anderson's Appeal, 12 Casey 476, the principle of which was affirmed afterwards in Dickinson *v.* Dickinson, 11 P. F. Smith 401. The questions involved are so fully and elaborately discussed in the opinion of the learned President, that we deem it unnecessary to add anything to what has been so well said by him.

Decree affirmed and appeal dismissed at the costs of the appellant.