# Boileau's Estate.

*Decedent's estates—Widow's election—Laches—Bill of review.*

Where a testator leaves a will free from all ambiguity by which he gives one third of the income of his estate to his wife, and two thirds to his parents, for life, with remainder to collaterals, and the wife permits the executor's account to be audited and confirmed without electing to take against the will, and thereafter for sixteen years until the death of testator's parents, accepts her share of the income under the will and receipts for the same, and it appears that she had never been mislead or misinformed as to her rights, and only alleges ignorance of her right of election, she cannot claim, seventeen years after her husband's death, to elect against his will.

Argued Jan. 7, 1902. Appeal, No. 143, Jan. T., 1901, by Sallie C. Boileau, from decree of O. C. Phila. Co., April T., 1884, No. 502, dismissing petition for review in the Estate of Frank M. Boileau, Deceased. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Petition for review.

ASHMAN, J., filed the following opinion:

To reach a finality in legal proceedings is almost as essential as to see that they are righteously conducted. The statutes of limitation and the legal presumptions of payment are based upon this theory, and they have worked beneficially because they have quieted titles and prevented frauds. The hardship which has been attributed to their enforcement has generally resulted from the apathy of the complainant himself, and its remedy would work a still greater injury to others who had been innocently misled by his laches. Fraud, of course, is out of the question, because fraud vitiates all that it touches and deserves no protection.

In the class of cases to which the present petition belongs, the statute has fixed the period within which a review is demandable as of right, and has left it to the courts to determine how far outside of that limit relief may be given as a matter of favor.

The testator, against whose will the widow now seeks to claim, died in June, 1883, and the executor's account was filed in June, 1884, and audited in July, 1884. The will was free from all ambiguity. It gave the estate to the executors, in trust, to pay one third of the income to the wife and two thirds to the father and mother, and the surviving parent, for life, with remainder to collaterals. Her share of the income was paid, thereafter, regularly to the widow, for sixteen years, and her election to take against the will was made for the first time in October, 1900, at the audit of the account which followed the death of the testator's parents. Her plea is that she was ignorant of the law and that until 1900 no one informed her of her legal rights. She does not allege that any one misinformed her, nor that any one intentionally misled her, but simply that those who might reasonably have been expected to advise her were silent. It is a matter of considerable moment that the testimony on this point was by no means one-sided in her favor. One witness declared that shortly after the death of testator's father, which took place in 1889, the witness had said to the petitioner on more than one occasion that she could have taken a part of the principal to use as she pleased, instead of being confined to the income, and that she had replied that it was probably best as it was—that she might have spent the money.

He was corroborated as to these conversations by his wife, who produced a letter dated October 5, 1900, from the petitioner, in which the latter, referring "to the many talks" they had had on the subject of the will, and in particular referring to an interview of 1890, wrote, "It would have made things unpleasant if I had contested the will before the father and mother died, and I—even if I had known I could." The words "and I" were crossed out and a different turn was apparently given to the sentence.

We are willing to give the petitioner the benefit of the inference which she draws from this evidence, to wit: that at the dates of the interviews she was unapprised of her right as widow to elect. One fact, however, she unquestionably knew— the proximate, if not the exact, value of her husband's estate. She gave more than sixty receipts for the quarterly income which for sixteen years had been regularly paid to her by the trustee, and she knew, according to her own statement, that the occasional variations in these payments arose from deductions for taxes and changes of investments. On one occasion, when an evident mistake appeared in the check, she went to the trust company, in person, and had it corrected. One title to relief is, therefore, missing. She was, moreover, a woman of keen intelligence, in no sense a recluse, but, on the contrary, holding a responsible position as teacher. Her case, then, stands this way: for seventeen years following her husband's death, she accepted, without protest, the provisions of her husband's will. In that period, the trust officer of the corporation trustee, who was originally in charge of the estate, and who according to the answer explained to her the provisions and effect of the will, died. Her two co-life tenants received during the balance of their lives the remaining income, and the residuary legatees were awarded vested interests in an estate of nearly $27,000, of which two thirds have vested in possession, and of which the petitioner claims that $13,500 belongs absolutely to her.

It is not wholly fair to say that because the trustee has not actually distributed the fund, the parties in remainder will be put, if the petitioner prevails, precisely where they would have stood if she had made her election within a year after testator's death. They may have hypothecated their interests; they may

have based upon them contracts to whose fulfillment they are essential; for all that appears to the contrary, they may have sold them outright. But dismissing all speculation whatever as to the possible results, the conclusion is inevitable that the review can be granted, if granted at all, upon the bald allega-. tion of ignorance of the law. There is no vestige of fraud, of misleading information, or of mistake of fact, upon which it can hang. Exactly the same length of delay, accompanied, as here, with full knowledge of the value of the estate, occurred in Bradfords v. Kents, 43 Pa. 474, and STRONG, J., said: "I know of no case in which it has been held that a lapse of time of more than five years after acts done which are usually treated as indicating an election will not be binding upon a widow and prevent her denial of an election, though the acts were done in ignorance of her rights." In Cox v. Rogers, 77 Pa. 160, the testator died in 1829 and the widow in 1866. She owned the land, in which the will gave her, however, only a life interest. It was held that having accepted a legacy under the will, her subsequent declarations that she held the land as her own and had not elected to take under the will, would not, even if she had accepted the legacy in ignorance of her right, have availed her after such lapse of time. Relief has been granted where there was suspicion of fraud, as in Woodburn's Estate, 138 Pa. 606, where the question was whether certain acts in pais done by the widow amounted to an election, as in Anderson's Appeal, 36 Pa. 476 ; and where she had not full knowledge of her husband's estate, as in Holt's Estate, 39 P. L. J. 395. But we can find no case in Pennsylvania where, with the confessed knowledge of the value of the estate of the husband and the regular receipt of income under his will for sixteen years, and without a suggestion that fraud or misrepresentation was practiced against her, the widow, on a plea that she was not advised as to the law, has been permitted to make her election. On the contrary, we find that reviews have been refused where the delay in asserting a right was less than is here apparent, in Bunting's Appeal, 4 W. & S. 469, Baggs's Appeal, 43 Pa. 512, Gosner's Estate, 133 Pa. 528, and Curran's Estate, 9 Pa, C. C. Rep. 514.

The petition for review is dismissed.

*Error assigned* was the decree of the court.

*John G. Johnson*, with him *Edward G. McCollin* and *Joseph R. Rhoads*, for appellant.

*Arthur E. Weil*, with him *W. Norman Morris* and *Edward H. Weil*, for appellee, were not heard.

Per Curiam, February 24, 1902:
The decree of the orphans' court is affirmed on Judge Ashman's opinion.