## Daub's Estate.

Argued October 2, 1931. Before WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*John G. Frazer*, with him *O. P. Robertson, John C. Bane, Jr.,* and *Reed, Smith, Shaw & McClay*, for appellant.—The election cannot be set aside because of the delay in filing the petition: Johnson's Est., 244 Pa. 600; Bailey's Est., 285 Pa. 408; Minnich's Est., 288 Pa. 354; Bradfords v. Kents, 43 Pa. 474; Boileau's Est., 201 Pa. 493; Salomon's Est., 297 Pa. 299.

The stipulation signed by petitioner on December 21, 1923, estops her from setting aside her election.

There was no fraud by August Daub which would justify the court in setting aside the election.

If there was a mistake in the amount of the payment, which we do not admit, it was a mistake of law and, for that reason, appellee is not entitled to the relief she asks: Peters v. Florence, 38 Pa. 194; Turnpike Road Co. v. American C. & T. Co., 240 Pa. 228; Frankfort v. Witty, 208 Pa. 569; Clark v. R. R., 250 Pa. 304; Shields v. Hitchman, 251 Pa. 455; Salomon's Est., 297 Pa. 299.

It is a general rule, and particularly applicable to this case, that claims against a decedent's estate raised only after his death are looked upon with great suspicion: Mueller's Est., 159 Pa. 590; Miller's Est., 188 Pa. 214; Hirst's Est., 274 Pa. 286; Gilbraith's Est., 270 Pa. 288; Finley's Est., 196 Pa. 140; Patton v. Com. Trust Co., 276 Pa. 95.

Margaret J. Daub was not competent: Irwin v. Nolde, 164 Pa. 205; Wolf v. Carothers, 3 S. & R. 240; Dickson v. McGraw, 151 Pa. 98; Dillon's Est., 269 Pa. 234; Buchanan v. Buchanan, 46 Pa. 186.

*John Rebman, Jr.,* for appellee.—The decree was proper: McCutcheon's Est., 283 Pa. 157; Rubinsky v. Kosh, 296 Pa. 285; West Homestead Boro. v. Erbeck, 230 Pa. 316; Culbertson's Est., 301 Pa. 438; Lackawanna Co.'s App., 296 Pa. 271; York Co. v. Thompson, 212 Pa. 561; Zeigler's Petition, 207 Pa. 131.

That Mrs. Daub, the widow, was a competent witness appears from the cases decided by this court: Horne & Co. v. Petty, 192 Pa. 32; Allen's Est., 207 Pa. 325; Broadrick v. Broadrick, 25 Pa. Superior Ct. 225; Norristown Trust Co. v. Lentz, 21 Montgomery Co. 180.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1931:

For more than thirty years, Charles C. Daub, this testator, and his brothers, August and Jacob, had been in

business together, he having a half interest in the firm and each of the others a quarter interest therein. Their partnership articles provided that upon the death of either of the partners, the others should pay his estate a specified sum in cash,—in the case of this testator, $210,000,—and all the decedent's interest in the firm's assets should then vest in the survivors. Whether or not the articles were broad enough to cover the death of the second of the three partners, leaving but one survivor, was not determined by the court below in this proceeding, nor will it be by us; our conclusion, as hereinafter stated, would be the same even though we decided they were not.

On March 22, 1921, Jacob Daub, one of the partners, died, and his personal representatives elected to take the sum he was entitled to under the partnership articles, in securities standing in the name of the firm. These were set apart for the benefit of his estate, but had not been transferred to it on December 14, 1922, when the present testator died. At that time the appraised value of the assets, standing in the firm name, was $543,957.88,—of which $101,500 belonged to Jacob's estate, leaving a net balance of $442,457.88. If the partnership articles did not apply to the situation then existing, testator's estate was entitled to receive two-thirds thereof, or $294,971.92, less the fees, costs and expenses of settling the partnership, and the depreciation in value possibly and not uncommonly arising from an enforced liquidation. If the partnership articles did then apply, the estate was entitled to receive from August, the surviving partner, the net sum of $210,000 in cash.

By testator's will,—which specifically refers to the partnership articles, but says nothing regarding the rights of the last survivor of the three partners,—he appointed his two brothers, Jacob and August, as executors and trustees, but the former having predeceased him, the latter was commissioned as sole executor. When the question of the widow's election came up, it was im-

portant for the executor to know, in order to advise her properly, whether the estate was entitled to the $210,000 in cash, or to an interest in the net proceeds on the winding-up of the partnership. He therefore laid the matter before the lawyer,—a man of unquestioned integrity,—who had been counsel for the firm and for each of the partners during the thirty years the firm had been in existence, and who had drafted the partnership articles and the will of testator. He advised the executor that testator's estate was entitled to receive only the $210,000 in cash provided for in those articles, and upon the payment of that sum all the assets of the firm would vest in the sole surviving member thereof. At the trial in this proceeding, the lawyer testified he had so advised the executor. Moreover, this conclusion agreed with what testator himself had repeatedly said after the death of Jacob, was his understanding of the scope of the partnership agreement.

On February 23, 1923, which was about two and a half months after the death of testator, his widow elected to take under his will, and signed a formal paper so stating. Three days later, at her residence, she duly acknowledged and delivered it and it was recorded the same day. Whether or not that meeting was the result of previous consultations on the subject, and what, if anything, had theretofore been said regarding the interest of testator's estate in the partnership assets, does not clearly appear, possibly because of the death of the executor and of the notary public as hereinafter set forth. The widow knew, however, that it was claimed the estate's interest in the partnership assets was $210,000 in cash, and that, under the will, she was to receive a life interest in $70,000, which was one-third of that sum, instead of an absolute interest in one-third of the estate, as provided by the intestate laws. In point of fact, the only assets of the estate were the contents of her home, which she received under her claim for the widow's exemption, and the estate's interest in the partnership.

The home itself had belonged to the firm, but it had been conveyed by the partners, through an intermediary, to her and her husband as tenants by the entireties, and on his death vested in her in fee.

About a year after testator's death, the executor filed his account, charging himself with the $210,000 and the appraised value of the furniture, and claiming credit for the delivery of the furniture to the widow, and for the usual items of expense arising in the settlement of estates. The widow and the three children of testator agreed in writing that the account should be confirmed absolutely, that the $70,000 should be awarded to a trustee for the benefit of the widow for life, with remainder to the children, and that the net balance should be divided between them equally. The will, the partnership articles and the agreement were handed to the auditing judge, and he decreed distribution accordingly.

From then on, the widow, without objection, regularly received the income of the $70,000, until January 31, 1929, more than six years after the death of testator, and nearly five years and eleven months after she had elected to take under his will. She then filed the present petition asking a decree vacating her existing election, and for leave to make a new election to take against the will. At that time, the notary public before whom she had acknowledged her election had been dead for several years, and the executor, the only other person who was present when it was executed, had recently died. A citation was awarded, answers were filed, testimony taken, and the court below granted the prayers of the petition. Testator's son, who was one of the respondents in the proceeding, then prosecuted this appeal.

The gravamen of her petition is that she had been told by the executor that the value of the estate was $210,000; that she was given no other information in regard thereto, except that it consisted of testator's interest in the partnership; that the executor "was in duty bound to act and advise [her] to the greatest possible extent";

that because of the close relations between them she did not seek legal advice until after he died, when, for the first time, she learned that the estate amounted to more than the $210,000, presumptively because its interest in the partnership was claimed to exceed that sum.

The testimony in support of the petition consisted, so far as it was important, in her own statements, which were vague and unsatisfactory, and were difficult to meet because of the death of the executor and the notary public. She admitted that, after her election, and during the executor's lifetime, she had never asked the executor or anybody else for information regarding the estate, but persisted in the contention that this was because of her great and continued confidence in him. Yet it was clearly proved, and is practically admitted even by her, that, about one year after the death of her husband and about five years before the petition was filed, she had had a controversy with the executor regarding a matter growing out of her interest in the estate, and that thereafter neither visited the other, though they lived but half a block apart, and their previous friendly relations had dwindled to a bowing acquaintance when they chanced to meet. Her testimony on cross-examination abounded in such answers as "I don't remember that," "I don't recall it," and similar expressions, yet, because of the lapse of time and the death of the executor and notary public, her evidence, in order to sustain her petition, should have been free from reasonable doubt. It was far from being so.

The basis of the decision of the court below was that, "whether or not the executor believed that the partnership agreement was in force at the death of the testator, his failure to disclose full information to the widow concerning her husband's estate, was......a constructive fraud on her, and laches should not be attributed to her in not filing a petition within the time usually required." We are not told why the court below so thought, and cannot agree with its conclusion. That the executor be-

lieved the partnership agreement applied to the status which existed after testator's death, is as free from doubt as anything human can be; and that all the other parties in interest likewise so believed at that time is an admitted fact. We do not qualify our oft-repeated decisions that a widow is entitled to full information regarding her deceased husband's estate before she can be called upon to make her election, but that principle does not control here.

As far back as 1863, when, under the then-existing laws, there was no time requirement within which a widow must elect to take against her husband's will or be presumed to consent to take under it, and where there was no formal election, and none was required (Greiner's App., 103 Pa. 89), we said in Bradfords v. Kents, 43 Pa. 474, 486, that we knew of "no case in which it has been held that a lapse of time of more than five years after acts done, which are usually treated as indicating an election, will not be binding upon a widow, and prevent her denial of an election, though the acts were done in ignorance of her rights." This was cited with approval in Boileau's Est., 201 Pa. 493, 496, and, so far as we are aware, has never been qualified. Here there was a formal election, a statutory time within which it was required to be made, and more than five years had elapsed.

By section 23 (b) of the Wills Act of June 7, 1917, P. L. 403, 410, which was in force when testator died, it is provided that a widow must make her election in writing "within two years [subsequently reduced by the Act of April 2, 1925, P. L. 117, to one year] after the issuance of letters testamentary," and "Neglect or refusal or failure to deliver such writing within said period shall be deemed an election to take under the will." No matter how hard the decision in a particular case may seem to be, if a widow does not make her election within the statutory period, the courts, because of that act, must declare that she is deemed to have made an election to

454

take under the will, for this "statute fixes the time as definitely as does that relating to taking appeals, and both are mandatory. ...... In view of the positive provisions of the statute we are not persuaded that relief could be granted ex gratia": Minnich's Estate or Sherwood's Est., 288 Pa. 354, 358.

It follows, since "the intention of the Act of 1917 is to promote certainty in the settlement of estates" (Bailey's Est., 285 Pa. 408), that we should, in furtherance of that intent, hold that ordinarily a petition to revoke an election must be presented within the statutory period after letters testamentary have been issued, or it will be deemed too late. A different conclusion will of course be reached in cases where actual fraud has been committed to obtain the widow's election, and no laches appears, for fraud vitiates everything it touches (Mitchell v. Kintzer, 5 Pa. 216; Rubinsky v. Kosh, 296 Pa. 285); but there is no such fraud in this case. The executor believed, and had a right to believe, that the information he gave the widow was strictly correct. Nor, we apprehend, would the rule stated be applied to a case where the executor or a party in interest continued to mislead a widow until the statutory period had passed, for that would itself be active fraud. We have no such situation here, however. During not less than half the two years' period then in force, and for over four years after it had expired, the widow was not on friendly terms with the executor, and was under no stress to act as she did, because of friendship for any one, and she does not claim that she was. As nothing was done during this time, nor until, by the death of the executor and notary public, all countervailing evidence was lost, we must hold, as in all such cases, that the application was made too late. We have frequently said, where there was no fixed period during which action must be taken, that a long delay, during which important evidence was lost by death, will result in the refusal of equitable relief: Kinter v. Com. Trust Co., 274 Pa. 436; Patton v. Com.

Trust Co., 276 Pa. 95, 100; Pitcairn v. Stuart, 302 Pa. 499, 505. The relief sought in this case is purely equitable.

In Salomon's Est., 297 Pa. 299, where testator died after the passage of the Act of April 2, 1925, P. L. 117, requiring a widow to elect within one year, the relevant dates were these: Testator died January 11, 1927; letters testamentary were granted February 8, 1927; the widow elected to take under the will February 9, 1927; and on March 5, 1928, she filed her petition for leave to take against the will. The petition was dismissed. Substantially adopting the language of the orphans' court, we said at page 300: "The ground upon which relief is asked is the misrepresentation as to the widow's rights, made by Executor Cole. While it is admitted that a misstatement of law was made, it was through ignorance this was done, and without any intent or purpose to defraud Mrs. Salomon...... [Ordinarily] an election by a spouse to take against a will must be filed within one year after the issuance of letters testamentary...... Here......the rule to permit the widow to take against the will was not obtained until nearly a month after the expiration of the year from the issuance of letters testamentary, although she had been informed of her rights some five months before the end of the year...... Our attention has not been called to any case where 'the rigidity of the act' here in question was relaxed and spouses 'permitted to change their election after the year,' nor have the courts indicated under what condition this should be done, if it can be done at all. It would appear very certain however that it cannot be done in the absence of fraud, and that a person claiming the right to change an election after the expiration of a year must have acted with due diligence, which cannot be said of the petitioner in this case. Here there was no fraud and appellant was guilty of laches." In the instant case, though the widow says she did not know the value of the estate during the running of the two years'

period, her delay, during twelve times the five months which was held fatal in the case last cited, without any reasonable explanation thereof, and until all evidence against her contention was lost by reason of death, compels us to hold that she was far more guilty of laches than was the widow in that case.

The decree of the court below is reversed at the cost of appellee, and her election to take under testator's will is reinstated and confirmed.