J-A14026-20

2020 PA Super 244

| | | |
|---|---|---|
| IN RE: ESTATE OF CALEEM L. JABBOUR, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: MAURA NICOTRA, CO-EXECUTRIX | : | |
| | : | |
| | : | No. 1275 WDA 2019 |

Appeal from the Order Entered July 24, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 02-15-01692

BEFORE:   SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

OPINION BY McLAUGHLIN, J.:                    FILED OCTOBER 07, 2020

Maura Nicotra ("Maura") appeals from the order granting the petition of Arlene Jabbour ("Arlene") to revoke her election to take against the will, and granting in part and denying in part Maura's petitions to compel Arlene to return assets to the estate. We affirm.

Decedent married Arlene in 1995; each had three children from prior marriages. Maura is one of Decedent's children. In anticipation of the marriage, Decedent and Arlene entered into a nuptial agreement that set forth their assets, waived interest in each other's pensions, and allocated $150,000[1] for Decedent's children. This sum could be reduced if funds were needed to cover Decedent's institutional care. See In re Estate of Jabbour, No. 1952 WDA 2016, unpublished memorandum at 2 (Pa.Super. filed July 17, 2018). Decedent and Arlene executed a Joint and Mutual Will on November 25, 1998.

_____

[1] Decedent and Arlene executed an addendum in 2007, increasing the sum designated for Decedent's children to $200,000.

"During his lifetime, the Decedent, who was a Certified Public Accountant, operated an accounting business out of his home. The business was entitled, 'C.L. Jabbour, P.A.' He had a stroke in early August 2014 and was hospitalized for approximately thirty (30) days." Orphans' Court Opinion, filed July 25, 2019, at 1.

After his hospitalization, Decedent, with the advice of his attorney, executed a power of attorney naming Arlene as his attorney-in-fact. Acting within the scope of the power of attorney, Arlene closed a savings account that had been in Decedent's name (and designated as an "in trust for" account for Maura). Arlene then transferred the money into an existing account in her own name and added Decedent to that account. Arlene used funds from that account to purchase a stair lift, a bed, a refrigerator, and a hot water tank, and to pay doctor co-pays. See Estate of Jabbour, No. 1952 WDA 2016, at *4-5. "Having never fully recovered from the stroke, the Decedent died testate on December 22, 2014. His Will, dated November 25, 1998, was admitted to probate and Letters Testamentary were issued to the Co-Executrices, Maura Nicotra and Terri L. Vargo, on April 16, 2015." Orphans' Ct. Op., at 1.

On June 18, 2015, Arlene filed an election to take against the Decedent's will. She later testified that she filed the election "out of an abundance of caution because she did not have sufficient information about the Decedent's non-probate assets, as her husband was very secretive about his finances." Id. at 2 (record citations omitted).

- 2 -

On December 29, 2015, Maura filed a petition for citation challenging Arlene's use of the power of attorney, and requesting that Arlene return to the estate $106,209.83, the full balance of the account before Arlene transferred the money into her own account. The orphans' court denied the motion and placed the funds remaining in Decedent's account in the estate. Maura appealed and this Court affirmed, stating, "Decedent authorized the closing of the account and transfer of funds or ratified Arlene's use of the [power of attorney] for that purpose." See Estate of Jabbour, No. 1952 WDA 2016, at *17.

Upon return to orphans' court, on January 15, 2019, Arlene filed a petition for revocation of her spousal election. On June 6, 2019, the court held a hearing on the petition to revoke, as well as Maura's petition for Arlene to return funds to the estate and for distribution of assets.

On July 24, 2019, the orphans' court entered an order granting Arlene's petition to revoke the spousal election. It also ordered her to return to the estate funds withdrawn from an account that the court found was solely in Decedent's name, and after reimbursing Arlene for funeral expenses, ordered distribution of funds in the escrow account. This timely appeal followed.

Maura raises the following questions on appeal:

1. Should Arlene have been permitted to revoke her spousal election against will when she did not demonstrate fraud and the petition was filed 3 years and 6 months after the statutory deadline?

2. Should Arlene have been permitted to revoke her spousal election against will given she had full knowledge of essential

- 3 -

facts, including the full value of every non-probate asset passing to other persons?

3. Are Decedent's children entitled to inherit the funds remaining from Decedent's liquid investments based on the plain, unambiguous language of the joint will and various nuptial agreements?

4. Should the orphans' court have ordered the reimbursement of expenses to Arlene without a hearing when there was no pending petition for reimbursement of those expenses, the record contained no evidence in admissible form as to those expenses and the court said it would schedule a hearing but did not do so?

Maura's Br. at 6 (unnecessary capitalization omitted).

Our standard of review is well settled.

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

In re Estate of Fuller, 87 A.3d 330, 333 (Pa.Super. 2014) (quoting In re Estate of Hooper, 80 A.3d 815, 818 (Pa.Super. 2013)) (some capitalization omitted).

In her first two issues, Maura contends that the orphans' court erred when it found that Arlene was entitled to revoke the spousal election to take against Decedent's will. Maura argues that there is a "statutory deadline" applicable to revoking a spousal election. Maura's Br. at 23. She claims that because Arlene's petition to revoke was not timely, Arlene bore the burden of proving that she was a victim of fraud and failed to carry that burden.

Alternatively, Maura asserts that Arlene could not revoke the spousal election because she made it with full knowledge of the facts of the estate. We disagree.

Pursuant to Pennsylvania law, a surviving spouse has a right to an elective share of one-third of certain property of the deceased, as set forth in 20 Pa.C.S.A. § 2203(a)(1)-(6). The statute provides a procedure for a surviving spouse to elect whether or not to take this elective share.

> Procedure for election; time limit
>
> (a) How election made.—A surviving spouse's election to take or not to take his elective share shall be by a writing signed by him and filed with the clerk of the orphans' court division of the county where the decedent died domiciled. Notice of the election shall be given to the decedent's personal representative, if any.
>
> (b) Time limit.—The election must be filed with the clerk before the expiration of six months after the decedent's death or before the expiration of six months after the date of probate, whichever is later. The court may extend the time for election for such period and upon such terms and conditions as the court shall deem proper under the circumstances on application of the surviving spouse filed with the clerk within the foregoing time limit. Failure to file an election in the manner and within the time limit set forth in this section shall be deemed a waiver of the right of election.

20 Pa.C.S.A. § 2210(a)-(b).

Despite Maura's repeated references to a "statutory deadline," no statute sets forth a deadline for revocation of a spousal election. Rather, Maura relies on case law—In re Daub's Estate, 157 A. 908 (Pa. 1931)—in support of her argument that a spousal election must be revoked within a "statutory" period. There, the Pennsylvania Supreme Court held that a surviving widow could not revoke her election to take under the will and

instead opt to take a forced share. The widow contended that the executor's statements about the extent of her late husband's estate were inaccurate. The Court stated that under its cases, a surviving spouse ordinarily must petition to revoke an election within the statutory period for taking the election, except "where actual fraud has been committed to obtain the widow's election, and no laches appears . . . ." Daub's Estate, 157 A. at 911.

The Court rejected the orphans' court's conclusion that the executor had failed to disclose full information to the widow such that her election was the product of "constructive fraud," and "laches should not be attributed to her . . . ." Id. at 910. The Court acknowledged that a surviving spouse is entitled to full information about the deceased's estate before having to make a binding election, but stated that that rule did not control. The Court explained that the widow had not been on friendly terms with the executor during the statutory period and for long after, such that she was under "no stress to act as she did." Id. at 911. The Court concluded that because the widow had delayed seeking to revoke her election for more than five years, "during which important evidence was lost by death," laches barred her from obtaining relief. Id.

As the Court acknowledged in Daub's Estate, the Court has established a rule that the period for revoking an election is tolled until the spouse knows all relevant information. The Court has explained:

> If an election is made with full knowledge of all essential facts, it cannot be withdrawn. But, no intervening rights appearing, the expression of intent once may be retracted upon discovery of the

true situation. If action has been taken by the wife or husband in ignorance of the value of the estate, or of the rights which would accrue under the provisions of the will as compared with the interests given by the intestate laws, then the first election may be set aside, and the distribution be made in the way provided by law.

. . . The authorities are clear that nothing less than unequivocal acts will prove an election, and they must be done with a knowledge of the party's rights, as well as of the circumstances of the case. Nothing less than an act intelligently done will be sufficient. She should know, and, if she does not, she should be informed, of the relative values of the properties between which she was empowered to choose; in other words, her election must be made with a full knowledge of the facts.

In re McCutcheon's Estate, 128 A. 843, 845 (Pa. 1925) (citations omitted).[2]

The two rules are easily harmonized. A surviving spouse may revoke an election to take under the will within the statutory period in which the spouse must ordinarily make such an election, unless there is fraud "and no laches appears." Daub's Estate, 157 A. at 911. However, that time does not begin to run until the spouse has "full knowledge of all essential facts." McCutcheon's Estate, 128 A. at 845.

Instantly, the orphans' court found that Arlene testified credibly that she filed the election in an "abundance of caution because she did not have sufficient information about the Decedent's non-probate assets, as her Husband was very secretive about his finances and she had no knowledge about his finances." Orphans' Ct. Op., at 2. The court also found that Arlene

---

[2] See also Daub's Estate, 157 A. at 910 ("[A] widow is entitled to full information regarding her deceased husband's estate before she can be called upon to make her election. . . ."); Appeal of Kreiser, 69 Pa. 194, 200 (1871) ("To bind the widow she must have full knowledge of the facts").

was "entitled to revoke the [e]lection, now that she has full knowledge of the extent of the Decedent's estate." Id.

The orphans' court did not abuse its discretion when it allowed Arlene to revoke her spousal election. The record supports the court's finding that Arlene did not have full knowledge of the essential facts when she made her spousal election. In the absence of such knowledge, she could not have balanced the alternative options intelligently. See McCutcheon's Estate, 128 A. at 845. Further, while the time between her initial taking of the election and her petition to revoke it was not short, the court did not find that the delay resulted in prejudice to others such that the court should have denied equitable relief. We likewise perceive no such prejudice.

Maura's citation to the Court's statement in Daub's Estate, and her assertion that the tolling principle of McCutcheon's Estate does not apply, are thus wide of the mark. The Court in Daub's Estate was not stating that the tolling principle does not apply unless there was actual fraud. Rather, the Court held that the tolling principle was not controlling because, under the facts of that case, the widow's long delay resulted in the loss of important evidence such that others were prejudiced. As we have explained, no such prejudice exists here. Hence, here, the orphans' court was well within its discretion when it found that Arlene was entitled to revoke the election now that she has full knowledge of the estate. Maura's first two issues are meritless.

In her third issue, Maura claims that the orphans' court erred when it did not direct the distribution of escrowed funds to Decedent's children. Her argument centers on an account that contained approximately $106,000. The account was the subject of an earlier appeal in which this Court held that Arlene acted within her authority as attorney-in-fact for Decedent when she closed the account and transferred the money into an existing account in her name, to which she later added Decedent. See Estate of Jabbour, No. 1952 WDA 2016, at *4-5. Presently Maura claims that the court erred when it did not direct distribution of the remaining funds from the account to Decedent's children in accordance with Decedent's joint will and nuptial agreements. See Maura's Br. at 37-38.

Upon review, it appears that the orphans' court found that Arlene was entitled to reimbursement from that account of $22,136.47 ($7,622.22 for Decedent's care and $14,514.25 for funeral expenses). The court then directed Arlene to transfer the balance of the funds in that account to the estate account. See Orphans' Ct. Op., at 3. Although the court rejected Arlene's argument that she was entitled to the funds because they were in a joint account, the court did not rule on Maura's claim that she is entitled to the funds based on Decedent's joint will and nuptial agreements. See id. at 3-4. Accordingly, this issue is not ripe for our review and we express no opinion whether Maura is entitled to relief in this regard.

Finally, in her fourth issue, Maura claims that the orphans' court erred when it found that Arlene was entitled to reimbursement for $22,136.47, for

- 9 -

funds spent on Decedent's care and funeral expenses. She claims that Arlene never properly filed a petition seeking such funds and did not substantiate her claim for reimbursement, such that the court abused its discretion when it granted her reimbursement. See Maura's Br. at 49-50

According to documents in the certified record, after the evidentiary portion of the June 6, 2019 hearing, the court asked the parties about Maura's petition for partial distribution of the escrow account. Counsel for Arlene responded that Arlene should be reimbursed from the escrow account for $7,622.22, which she spent on the Decedent's care, as well as for funeral bills. See N.T. Hearing, 6/06/19, at 148. The parties stipulated to the admission of exhibits, and the court allowed counsel for Arlene to submit the exhibits after the hearing, without objection. See id. at 69, 155-56. The court asked the parties to file proposed findings of fact and conclusions of law, and they did so. Thereafter, on July 24, 2019, the orphans' court issued its opinion and order in which it found that Arlene was to be reimbursed for Decedent's care and funeral expenses, citing the exhibits submitted following the hearing.

Unfortunately, the exhibits on which the orphans' court relied in allowing reimbursement are not in the record certified to this Court on appeal. Ensuring that the certified record contains everything this Court needs to resolve the appeal was Maura's responsibility as the appellant. See Commonwealth v. Bongiorno, 905 A.2d 998, 1000-01 (Pa.Super. 2006) (en banc) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the

materials necessary for the reviewing court to perform its duty"). In the absence of the exhibits, we cannot determine that the orphans' court abused its discretion when it ordered the reimbursement. Therefore, Maura has waived this issue. *See Commonwealth v. Holston*, 211 A.3d 1264, 1277 (Pa.Super. 2019) (en banc) (finding waiver where absence of necessary documents from certified record hindered appellate review).

   Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2020