184 N.J. Super. 217 (1982)
445 A.2d 473
BERNICE MCKAY, PLAINTIFF,
v.
ESTATE OF LOUIS MCKAY, DEFENDANT.
Superior Court of New Jersey, Law Division Probate Part, Atlantic County.
Decided February 11, 1982.
*219 Allen A. Etish for plaintiff (Greenberg, Shmerelson, Weinroth & Etish, attorneys).
L. Mifflin Hayes for defendant.
STEEDLE, J.S.C.
At issue is a motion by the widow Bernice McKay for an order allowing the filing of a widow's election against the will of decedent Louis McKay out of time of the six-month period enumerated in N.J.S.A. 3A:38A-5(a). The motion denied for the following reasons:
The facts are undisputed. Louis McKay died on March 10, 1981, a resident of Atlantic County, New Jersey. On or about April 7, 1981 attorney Hayes qualified as executor of decedent's will. On April 14, 1981 Hayes sent each of the beneficiaries a copy of the will and notice of probate. As the certification of executor Hayes indicates, decedent's estate consists almost entirely of royalty interests in various musical compositions written or recorded by Billie Holiday, as well as a royalty interest in a book written by her. (Billie Holiday was married to McKay at the time of her death and her royalty interests passed to him as the sole heir.)
On May 12, 1981 attorney Etish wrote to executor Hayes and indicated that he was representing Bernice McKay, who sought advice whether to claim the widow's elective share or to take the 20% bequest of the residuary estate as provided by the will. The certification of Etish says the indication to elect was conditioned upon obtaining full disclosure from the executor as to exactly what the assets were. However, the May 12, 1981 letter to executor Hayes merely stated: "At this point in time, Mrs. *220 McKay has indicated her intention to so proceed and I would question whether or not you would be in a position to provide me with an accounting of what you anticipate the estate consists of." The letter evinces no conditional language and only requests the executor's anticipation of what the estate comprises. On May 18, 1981 the executor wrote to Etish and provided a summary of the assets of the estate, but there was no value assigned to the assets because the records were not sufficient to permit Hayes to value the assets.
On July 2, 1981 Etish wrote to Hayes requesting if "any more complete information as to the evaluation of the estate" could be made so as to enable Etish to advise widow McKay whether to take the elective share. To this request executor Hayes responded by letter to Etish on July 8, 1981. This letter listed all the cash assets of the estate and indicated that nine companies would probably pay future royalties that were incapable of being valued as of the date of that letter. That letter also indicated that Hayes would try to provide more information as to the royalties for the three years prior to the death of decedent within the upcoming month (August 1981). Executor Hayes kept his word by letter of August 24, 1981, which listed a breakdown of the valued royalty assets for the prior three years (1978-1980). At the end of the letter the executor stated: "To the best of my current knowledge the above constitutes all assets of Mr. McKay's estate. If you have any questions, please let me know."
On September 2, 1981 Etish wrote to Hayes concerning the July 8, 1981 letter, requesting more information as to the royalties. Apparently at the time of the writing of this letter Etish had not yet received the August 24, 1981 letter mentioned above. On September 8, 1981, Hayes wrote back to Etish indicating the crossing of the letters (August 24, 1981 and September 2, 1981) in the mail. Also in the September 8, 1981 letter Hayes indicated, "To the extent that statements are missing, they have been requested and I hope to have all information shortly ... If you did not receive detailed royalty *221 information [contained in the August 24, 1981 letter], please let me know as soon as possible." Hayes also indicated a method of valuation of the royalty interests for inheritance tax purposes and noted that if there were any questions concerning this valuation, Etish should contact Hayes. There was no further correspondence between Etish and Hayes.

I
The time period during which a surviving spouse may elect against a will is specified in N.J.S.A. 3A:38A-5(a), which states:
a. The surviving spouse may elect to take his elective share in the augmented estate by filing in the Superior Court in the county in which the personal representative was appointed a complaint in an action applying for the elective share, within 6 months after the appointment of a personal representative. Before the time for election has expired, the court may for good cause shown by the surviving spouse extend the time for election upon notice to persons interested in the estate and to distributees and recipients of portions of the augmented estate whose interests will be adversely affected by the taking of the elective share. [Emphasis supplied]
The elective share statute itself is not written in mandatory language. However, the statement by the Senate Judiciary Committee which accompanies the statute states, in relevant part:
The right of a surviving spouse to take an election must be exercised during his lifetime, and the right to election must be made within 6 months after the appointment of the personal representative. The court may extend the time for election before the time for election has expired. [Notes following N.J.S.A. 3A:38A-1; emphasis supplied]
Hayes was qualified as executor on April 7, 1981. Therefore, plaintiff had until October 7, 1981 to decide whether to elect to take against the will or to seek leave of the court requesting an extension of the six-month time period; plaintiff did neither.
Executor Hayes, believing that plaintiff had sufficient information with which to make an informed decision and in consideration of the fact that no further request for information was made, nor leave sought for extension nor election made before the expiration of the election period, prepared the inheritance tax affidavit and a proposed distribution of estate income based *222 on the will. The present motion to allow the filing of an election out of time was received by the Atlantic County Surrogate on November 18, 1981.
In support of the motion plaintiff/widow McKay states that N.J.S.A. 3A:38A-5(a) is a "statute of limitations" and as such may be waived when none of the underlying policies of the elective share statutes are violated by filing an election out of time. Plaintiff McKay further asserts that the executor did not provide all necessary information to her to make an informed decision within the six months and, therefore, that equitable estoppel should toll the six-month limitation period.
In opposition to the motion, executor Hayes states that plaintiff failed to comply with the plain and clear terms of the statute. Hayes further notes that if plaintiff in fact needed further information, she should have requested that information or sought leave of the court for an extension of time to acquire that information.

II
This court disagrees with plaintiff's contention that the elective share statute, N.J.S.A. 3A:38A-5(a), simply sets forth a time period limitation and should therefore be treated as any other "statute of limitations." Other jurisdictions show a split of opinion on the question. See In re Stitzer's Estate, 103 Colo. 529, 87 P.2d 745 (Sup.Ct. 1939), and In re Bersin's Estate, 98 Ohio App. 432, 129 N.E.2d 868 (Ohio App.Ct. 1955).
The elective share statute is like a statute of limitations in that it delineates a specified period of time during which a party must act. However, the statute is more explicit than a "statute of limitations" in that it expressly permits the court to extend the election period, whereas a statute of limitations is silent on the rights of the court to extend any such period. Further, the elective share statute gives explicit instructions to the court *223 regarding when it may act, limiting this ability to "[b]efore the time for election has expired." N.J.S.A. 3A:38A-5(a).

III
Plaintiff did not apply to the court for an extension of time to elect, as she should have under N.J.S.A. 3A:38A-5(a). Even assuming that the information she needed to make a reasoned decision was not made available within the six-month period (a situation which plaintiff did not convey to the executor), the burden is on the surviving plaintiff/spouse to apply for an extension of the period for "good cause" within the six months. Id. If plaintiff believed she lacked sufficient information, she should have, for that reason alone, made application to the court for an extension. Plaintiff's argument that she was not provided with sufficient information could be construed as "good cause" under the statute, enabling her to apply for an extension. The Legislature anticipated such circumstances and provided a procedure with which plaintiff did not comply.
Plaintiff further argues that equitable estoppel should be invoked against the executor due to his alleged failure to disclose the value of the entire estate until after the six-month period for election against the will had expired. Equitable estoppel has been held to be:
... [c]onduct amounting to a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse.... [Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979)]
This court finds that there was no misrepresentation and/or concealment intended by executor Hayes. In his letter to plaintiff's attorney, dated September 8, 1981, executor Hayes set forth what he felt was all information needed by plaintiff and ended the letter saying: "If you have any questions concerning *224 this [information], please let me know." Plaintiff's attorney did not subsequently contact Hayes prior to the expiration of the six-month period. Hayes had set forth all available information and thus it was incumbent upon plaintiff to make a further request and file with the court for an extension of time if she felt more information was needed.

IV
The stated purpose of the new elective share statute is "to prohibit disinheritance of a surviving spouse who needs continuous support." N.J.S.A. 3A:38A-1. The circumstance which prompted the Legislature to enact this statute was:
Under existing New Jersey law, a decedent may deplete his entire estate during [his] lifetime by gift or otherwise, so that at the time of [his] death his assets or estate have been either completely or considerably depreciated. The effect is to disinherit the surviving spouse to the extent of such depreciation and can result in complete disinheritance.
It is uncontroverted that plaintiff will receive a 20% bequest under the will. Moreover, she does not allege that her deceased husband had depleted his estate or assets in an attempt to completely or partially disinherit her. It is not in contravention of the stated purposes of the elective share statute to deny plaintiff the relief sought.

V
The denial of plaintiff's motion may seem harsh in that she was apparently prepared to make an election against the Will only one month after expiration of the time period. However, it is a legislative prerogative to amend a statute, not the court's.
This court finds that its power to extend the time period expires six months after the representative is appointed and therefore it is powerless to act. An order shall be submitted accordingly, reflecting the denial of the motion.