59 A.3d 608

IN THE MATTER OF THE ESTATE OF
PAKDEE B. PECK, DECEASED.

Superior Court of New Jersey
Chancery Division Probate Part Sussex County

Decided February 6, 2012.

*Mark J. Hontz* for plaintiff Robert M. Peck (*Hollander, Strelzik, Pasculli, Pasculli, Hinkes, Gacquin, Vandenberg & Hontz, LLC,* attorneys).

*Gerald J. Martin* for the Estate of Pakdee B. Peck (*Biebelberg & Martin,* attorneys).

GANNON, J.S.C.

This case requires that the court examine the impact of the elective share statute, *N.J.S.A.* 3B:8–1 to –19, on the actual intent of the decedent expressed in a foreign will disposing of her assets in Thailand, prior to the execution of a Last Will and Testament in New Jersey on July 11, 2011.

This matter arises on plaintiff, Robert M. Peck's application on an order to show cause on a verified complaint seeking entitlement to his statutory spousal elective share of the Estate of Pakdee B. Peck in accordance with *N.J.S.A.* 3B:8–1 to –19; and to include in the decedent's augmented estate both the real and personal property of the decedent located in Thailand at the time of her death, which was the subject of a separate will in Thailand.

The decedent resided in Andover, New Jersey and died testate on August 16, 2011, at which time she was married to and living with plaintiff. Plaintiff had a right as surviving spouse to elect to take his elective share of one third of the augmented estate. *N.J.S.A.* 3B:8–1. Decedent had executed her will in New Jersey on July 14, 2011.

The provisions of decedent's New Jersey will stated that it was the decedent's "[E]xpress wish and desire that my husband, Robert M. Peck receive only his elective share of my estate as defined in *N.J.S.A.* 3B:8–1." The will fails to make reference to any previous wills, or property located outside of the United States. However, in correspondence dated July 13, 2011, decedent's counsel confirmed with the testatrix that she "advised [him] that [she] had prepared and signed a previous will in Thailand relating to property owned [by her] in Thailand and [that she] did

not wish to make a specific reference to preserving the terms of that will in the will [he] prepared for [her] for the reasons discussed."

Contemporaneous with signing the New Jersey will, decedent executed a separate written document witnessed by two people and acknowledged before a notary public, which stated that she ratified the provisions of a will executed in Thailand disposing of all property in Thailand. She further expressed her intention that the New Jersey will dispose only of the property owned by her in the United States.[1]

Plaintiff filed a verified complaint for the statutory elective share pursuant to *N.J.S.A.* 3B:8–1 on October 26, 2011. In the complaint, plaintiff lists "Real Property" and "Bank Account and Investments" owned by the decedent in Thailand as property of the decedent that should be included in the decedent's augmented estate for purposes of computing plaintiff's elective share.

The Estate of Pakdee Peck opposed plaintiff's application and the inclusion of decedent's property in Thailand in the augmented estate for elective share purposes. The Estate's position is that a decedent has the right to have two final wills in separate sovereign nations, with each will governing the disposition of property in each country. The Estate argues that the court should adhere to the decedent's intent that the property in each country be treated separately under each will.

The Estate argues that this court cannot exercise jurisdiction over the assets in Thailand, citing *Aspden v. Nixon,* 45 *U.S.* 467, 4 *How.* 467, 11 *L.Ed.* 1059 (1846). In that matter, the Supreme Court of the United States held that the powers of two different administrators in England and Pennsylvania extended only to the limits of the sovereignties creating them, and that neither allows the other to meddle with any assets outside their respective jurisdictions. The Supreme Court held that the assets in that

---

[1] The written document and New Jersey will contain the written initials of the decedent, the date, July 14, 2011, and the same time 1:50 a.m.

case, located in Pennsylvania, were subject only to the control of the Pennsylvania administrator, and those in England to that of the English administrator, and that neither can affect any portion of the estate of the decedent not within the jurisdiction from which they received their appointment. *Id.* at 482, 11 *L.Ed.* at 1073.

A somewhat different result was obtained in a subsequent New Jersey case. In examining a will, providing that it was limited to assets in the United States, the court in *In Re Wolf's Estate*, 37 *N.J.Super.* 411, 117 *A.*2d 535 (Ch.Div.1955) held that assets located in the Principality of Monaco, where there was no will disposing of them and no one qualified there to administer the assets would not pass under the New Jersey will but by intestacy enabling the New Jersey executor to collect and administer the assets.

This court has jurisdiction to decide the dispute sub judice as it involves a controversy respecting a will in New Jersey and the applicability of the elective share statute on the augmented estate here in New Jersey. *N.J. Const.* art. VI; *N.J.S.A.* 3B:8–1 to –19.

This court, in reaching its determination regarding the inclusion of decedent's property located in Thailand into her augmented estate for purposes of *N.J.S.A.* 3B:8–1, relied upon the undisputed facts found above, the briefs submitted by the parties, the arguments presented in court, and the applicable New Jersey statutes and case law.

First, the court finds that contrary to the Estate's assertion, the central issue in this matter is not whether the decedent has the right to have two final and separate wills each disposing of assets located in two different countries.[2] The central issue presently before the court is whether property owned by the

---

[2] A new will does not revoke a former will unless it purports to do so, or makes a disposition of the testators property so inconsistent with that made in the former will that the two wills cannot stand together. *See N.J.S.A.* 3B:3–13; *Smith v. McChesney,* 15 *N.J.Eq.* 359 (1862); 79 *Am.Jur.2d Wills* § 479–489 (2002).

decedent at the time of her death, located in a foreign country and covered by a final will executed in that foreign country, has an effect upon the elective share right under *N.J.S.A.* 3B:8–1.

■ When determining what assets are to be included in the augmented estate in New Jersey, the court must first look to the elective share statute's language. Where statutory language is clear and unambiguous there is no room for judicial interpretation or resorting to rules of construction or extrinsic matters. *In re Estate of Post*, 282 *N.J.Super.* 59, 72, 659 *A.*2d 500 (App.Div.1995) (citing *Vreeland v. Byrne*, 72 *N.J.* 292, 370 *A.*2d 825 (1977)).

The language of the New Jersey elective share statute is plain, clear, and detailed. The statute specifically states what property is to be included and excluded from the augmented estate. *N.J.S.A.* 3B:8–3(a) provides:

The "augmented estate" means the estate reduced by funeral and administration expenses, and enforceable claims, to which is added the value of property transferred by the decedent at any time during marriage, or during a domestic partnership, to or for the benefit of any person other than the surviving spouse or domestic partner, to the extent that the decedent did not receive adequate and full consideration in money or money's worth for the transfer, if the transfer is of any of the following types:

a. Any transfer made after May 28, 1980, under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property.

■ No evidence has been presented in this matter which would establish that at the time of decedent's death she did not retain possession or enjoyment of the real and personal property in Thailand. It is also of no significance that the property is located in a foreign country, as the augmented estate "includes out of state real property to the same extent as it would be included if it were located in New Jersey." *In re Estate of Cole*, 200 *N.J.Super.* 396, 402, 491 *A.*2d 770 (Ch.Div.1984) (citing *N.J.S.A.* 3B:8–2).

The property at issue in this matter also fails to fall within the augmented estate exclusions set forth in *N.J.S.A.* 3B:8–5, which excludes transfers made with the written consent or joinder of the

surviving spouse, life and accident insurance, joint annuities or pensions payable to another. Pursuant to *N.J.S.A.* 3B:8–3, the Thailand property is probate property, which decedent retained possession or enjoyment of up until her death and shall be included in her augmented estate.

■ Finally, the court addresses the Estate's contention that the court should consider the decedent's probable intent of having the Thailand property excluded from all consideration as it pertains to her New Jersey will. This court notes that the evidence submitted included the letter submitted by counsel, and the written statement of the testator signed simultaneously with the execution of the New Jersey will. However, the elective share statute was enacted to "prohibit disinheritance of a surviving spouse who needs continuous support." *McKay v. Estate of McKay,* 184 *N.J.Super.* 217, 224, 445 *A.*2d 473 (Law Div.1982) (citing *N.J.S.A.* 3A:38–1, the predecessor to *N.J.S.A.* 3B:8–1 to – 19).

■ In this case, the Legislature's intent is clear. The elective share statute has nothing to do with carrying out the decedent's actual intent. In fact, the statute may be utilized to circumvent the actual intent to disinherit a surviving spouse. This court declines to consider decedent's probable intent in establishing two separate and final wills covering property located in separate countries. The decedent's assets located in Thailand must be included within her augmented estate in New Jersey for the purpose of calculating the elective share of her surviving husband, Robert Peck, under the New Jersey will.