REL: 12/05/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

————————————

1120848

————————————

**Korie Sterling Saylor**

v.

**Jonathan Fred Saylor, as personal representative of the Estate of Woodie Jim Saylor, deceased**

**Appeal from Marshall Circuit Court**
**(CV-12-0101)**

MURDOCK, Justice.

Korie Sterling Saylor appeals from a summary judgment denying her claim for an elective share of the estate of her deceased husband, Woodie Jim Saylor. We affirm.

1120848

## I.    Facts and Procedural History

Woodie and Korie married in October 2005.  Woodie died in May 2011.  In addition to Korie, Woodie was survived by Jonathan Fred Saylor, an adult son from Woodie's previous marriage.

A few weeks after Woodie's death, Jonathan filed a petition to probate Woodie's will in the Marshall Probate Court.[1]  The petition also requested that the probate court appoint Jonathan as personal representative of Woodie's estate ("the estate").

Woodie's will requests that Jonathan be appointed as personal representative of the estate, and the will relieves the personal representative of the obligations to provide a bond and to file an inventory.[2]  In regard to the distribution of the estate, Woodie's will states:

> "I GIVE, DEVISE AND BEQUEATH all my property of whatever nature and wherever situated, including any property over which I may have a power of

---

[1]Woodie's will appears to be self-proving.  See Ala. Code 1975, § 43-8-132.

[2]See Ala. Code 1975, § 43-2-851(c) (providing that a will may "exempt the personal representative from giving bond"); Ala. Code 1975, § 43-2-311 (providing that a will may "exempt an executor from filing an inventory"); see also Ala. Code 1975, § 43-2-835(b) (exemption from filing an inventory).

2

1120848

appointment, to my son, JONATHAN FRED SAYLOR, if he survives me. HOWEVER, I GIVE, DEVISE AND BEQUEATH a life estate in and to my home and real property where my wife and I reside at the time of my death, to my wife, KORIE STERLING SAYLOR."

(Capitalization in original.)

Contemporaneously with the filing of the petition to probate Woodie's will, Jonathan also filed a document executed by Korie. In that document, Korie acknowledged that she had received notice of the filing of the petition to probate Woodie's will, and she consented to the admission of the will to probate without further notice to her.[3] See Ala. Code

------

[3]The document executed by Korie states:

"I, THE UNDERSIGNED, being one of the heirs at law and next of kin of WOODIE JIM SAYLOR, deceased, do hereby acknowledge that I have notice of the filing by JONATHAN FRED SAYLOR of the petition to Probate the Last Will and Testament of said decedent and the undersigned does hereby request the Court to immediately admit said Last Will and Testament to probate and record without further notice to me."

(Capitalization in original.)

Pursuant to the language of the above-quoted document, Korie waived the right to further notice as to the admission of Woodie's will to probate. In their appellate briefs, the parties address whether the document also waived Korie's right to claim an elective share from Woodie's estate. See Ala. Code 1975, § 43-8-70 et seq. (statutes governing elective share). This court has held that a waiver of the right to claim an elective share must "clearly show[] an intention to release" that right. Garrard v. Lang, 489 So. 2d 557, 561

3

1120848

1975, § 43-8-164 (notice requirements for hearing to probate a will).

On June 13, 2011, the probate court entered an order admitting Woodie's will to probate and appointing Jonathan as the personal representative of the estate ("the personal representative").

Korie did not file a petition for an elective share within six months after the will was admitted to probate. See Ala. Code 1975, § 43-8-73(a) (elective-share petition must be filed "within six months after the date of death, or within six months after the probate of the decedent's will, whichever limitation last expires"). On December 22, 2011, Korie filed a "Request for Extension of Time to File Petition for Elective Share." In that document, she asserted:

> "2.    The estate is still under administration and has not been settled.

---

(Ala. 1986); see also Horne v. TGM Assocs., L.P., 56 So. 3d 615, 624 (Ala. 2010) ("'[A] waiver consists of a "voluntary and intentional surrender or relinquishment of a known right," and the burden of proof in establishing a waiver rests upon the party asserting the claim.'" (citations omitted)). No language in the document Korie executed states, or might be construed as stating, that Korie was waiving her right to claim an elective share.

4

"3.    No accounting or inventory has been filed;[4] the assets and liabilities are unsettled at this point.

"4.    An extension is necessary to enable the widow to acquaint and familiarize herself of the condition of her husband's estate and make an intelligent election thereof.

"5.    The spouse is not guilty of any conduct which would tend to negate her right to an extension.

"6.    Refusing to extend the period would impose an undue hardship upon the spouse.

"7.    Spouse first consulted counsel on December 20, 2011, and first learned of her right to dissent from the Will.  Spouse had not been apprised of her election right and files this request as soon as practical with diligence upon notice.  The widow is entitled to the requested relief in equity.

"8.    Alabama Code [1975,] § 43-8-73[,] is remedial in nature and should be construed liberally so as to give the broadest possible protection to the surviving spouse."

Korie requested "a reasonable time to file a Petition for Elective Share."

On January 12, 2012, the personal representative filed an objection to Korie's request for an extension of time.  The

_____

[4]As noted above, Woodie's will relieved the personal representative from the statutory obligation to file an inventory.  Also, as of the date on which she filed her request for an extension of time, Korie had not sought an accounting from the personal representative.

personal representative contended that, pursuant to "§ 43-8-73, [Ala. Code 1975,] any extension of time to file notice of election must be granted before the election period has expired" and that, "[i]n order to be timely, the said petition for elective share would have had [to have] been filed by December 13, 2011." The personal representative requested that the probate court deny Korie's request for an extension of time.

Section § 43-8-73(a) provides:

"The surviving spouse may elect to take his elective share by filing with the court and mailing or delivering to the personal representative, if any, a petition for the elective share within six months after the date of death, or within six months after the probate of the decedent's will, whichever limitation last expires.

"The court may extend the time for election for cause shown by the surviving spouse before the time for election has expired."

(Emphasis added.)

On January 23, 2012, Korie filed a "Petition for Elective Share," stating that she was claiming an elective share of the estate and noting that she had filed a request for an extension of time to do so on December 22, 2011.

6

On February 14, 2012, the probate court entered an order granting Korie's request for an extension of time and an order allowing Korie's claim to take an elective share of the estate. The latter order did not adjudicate the amount of that elective share; it set a date on which the probate court would conduct a hearing to determine that amount and then enter a further order with respect thereto. See Ala. Code 1975, § 43-8-70(a) (providing that a surviving spouse's elective share is "the lesser of (1) All of the estate of the deceased reduced by the value of the surviving spouse's separate estate; or (2) One-third of the estate of the deceased"); see also Ala. Code 1975, § 43-8-73(d) ("After notice and hearing, the court shall determine the amount of the elective share and shall order its satisfaction from the assets of the estate."); Ala. Code 1975, § 43-8-75(a) ("In the proceeding for an elective share, values included in the estate which pass or have passed to the surviving spouse, or which would have passed to the surviving spouse but were renounced, are applied first to satisfy the elective share and to reduce any contributions due from other recipients of transfers included in the estate.").

In May 2012, the personal representative filed, in the Marshall Circuit Court, a petition to remove the estate administration from the probate court to the circuit court. See Ala. Code 1975, § 12-11-41. Thereafter, the circuit court entered an order removing the administration of the estate from the probate court to the circuit court; the probate court had not yet held a hearing to determine the amount of Korie's elective share.

In November 2012, the personal representative filed in the circuit court a motion for a summary judgment as to Korie's claim for an elective share. The motion alleged that the probate court should have denied Korie's claim on the grounds that her petition was not timely filed and that, under the circumstances presented, the probate court had no authority to extend the time for Korie to exercise her right of election.

Korie filed a response to the personal representative's summary-judgment motion. Her response alleged:

> "1. At some point on or before June 13, 2011, the widow met with the attorney for the estate for execution of a consent to probate the Will as requested. ... Neither at that time, nor at any time, did he advise her that he represented the estate and that she should seek independent legal

8

counsel nor was there any discussion of the assets of the estate which would have allowed her to make an informed decision where she was aware of her options. Under the Will, she received a life estate in the marital residence for which she is paying a mortgage payment of $986.00 a month (26 years remaining) as well as paying for half of a tractor ($22,000) in which she has no interest and which is an asset of the estate.[5]

"....

"3. On or about the 20th day of December, 2011, the widow first consulted with counsel regarding her situation. Aside from having lost her husband seven months before, she was unaware of the assets of the estate and extent of his holdings. ... Counsel immediately filed on the 22nd day of December, 2011, a request for extension to file her petition for an elective share of the decedent's estate (nine days after the election period expired). Shortly thereafter, counsel for the respondent reviewed the probate records of Marshall County regarding the real estate holdings of the decedent and ... filed the widow's petition for elective share. Said petition was granted by Order of the Probate Court on February 14, 2012, granting the respondent's petition for an elective share.

"4. Ala. Code 1975, § 12-22-21, provides the basis for appeal from the Order, Judgment or Decree of the Probate Court may be taken by the party aggrieved to the Circuit Court or Supreme Court in the cases specified and within the time frame for an appeal, generally within forty-two days after a determination. No appeal, timely or otherwise, has been made regarding the Order of the Probate Court regarding the extension of time granted or the order granting the elective share requested by the widow."

---

[5]The record does not reflect the bases for Korie's obligations as to the mortgage and the tractor.

1120848

In support of her response, Korie filed an affidavit that states:

> "I am Korie Sterling Saylor, widow of the decedent, Woodie Jim Saylor, and respondent in this case. This case involves an elective share regarding my deceased husband's estate. At the time of his death, my husband was in the cattle business; after his death I worked as a waitress at the El Rancho restaurant. I was aware that he owned cattle and llamas, equipment and land, I was unaware of the specifics of the business operation and the condition of his estate. At some point on or before June 13, 2011, I met with Clint Maze, the attorney for the estate, regarding execution of the consent to probate the Will as he requested. Neither at that time nor at any time, did he advise me that he represented the estate and that I should seek independent legal counsel nor was there any discussion of the assets or composition of the estate. Under the terms of the Will, I received a life estate in our residence. I am currently paying $986.00 a month with 26 years remaining on the mortgage for our house and the 9.09 acres, as well as, paying for half of a tractor ($22,000) that belongs to the estate."

In January 2013, the circuit court entered an order granting the personal representative's motion for a summary judgment. The order states that Korie

> "claims that the attorney for the estate obtained her signature on the waiver and consent to probate the will without explaining that said attorney represented the estate, and further, that his estate consisted of much more than she was aware. Counsel for the estate argued in oral arguments, without objection from Korie, that he provided her with a copy of the will for her to read and he did not

10

advise her. The waiver is clear and unambiguous as to its content and clearly consents to admitting the will to probate.

"[Korie] then waited more than six months to seek legal counsel relating to taking any action relating to taking an elective share. The statute within which to file requesting an extension of time had already run before she took any action to elect. Her attorney promptly took action and filed a motion the day following her first visit with her attorney. [Korie] claims that the Probate Court of Marshall County issued an order allowing an extension of time and that such was an appealable order to this Court and that the personal representative's failure to appeal the order timely makes it a final order and that this Court has no authority to set the order aside. This case was removed from probate to this Court after the order allowing the extension of time was granted and after the appeal time for an order from probate court that must be appealed.

"The probate Court without question has jurisdiction over granting or refusing to grant the right to elect a distributive share, but there are certain types of orders appealable from probate court to this Court or the Alabama Supreme Court as set out in §§ 12-22-20 and -21, Code of Alabama 1975, and the Court finds the order granting an extension of time to file an elective share is not one of the specified orders that must be appealed. Therefore, since the estate was removed from probate to this Court, the Court determines it has jurisdiction to determine the issue of whether or not the order granting an extension of time should be altered, amended, or vacated.

"....

"The Court ... find[s] that the Estate has raised an affirmative defense of the applicable statute of limitations and having found no fraud or

11

1120848

undue influence and the undisputed evidence shows
clearly [Korie] did not rely on legal advice from
the estate's attorney, as well as having failed to
file her election within the initial six months
allowed by § 43-8-7[3], Code of Alabama 1975, after
having been furnished with a copy of the will and
waiving a hearing on admitting the will to probate,
this Court determines the following:

> "1. There is no genuine issue of material
>     fact relating to this issue, and

> "2. The Estate is entitled to a judgment
>     as a matter of law."

The order concludes by setting aside the order granting Korie

an extension of time in which to file her claim for an

elective share and by dismissing Korie's petition for an

elective share. Korie filed a postjudgment motion, which the

circuit court denied. Korie appeals.

## II. Discussion

A. Appealability of February 2012 Order Granting An Elective
   Share

Korie first argues that the probate court's February 2012

order "granting" her petition for an elective share was an

appealable order under § 12-22-21(4), Ala. Code 1975, which

provides for an appeal "on the decision of the [probate]

court, in proceedings instituted to compel the payment of a

legacy or distributive share, at any time within 42 days after

12

such decision." (Emphasis added.) Korie contends that the personal representative's failure to appeal that February 2012 order resulted in that order becoming the law of the case. Korie's argument misapprehends the nature of the probate court's orders that are at issue and/or the import of § 12-22-21(4).

Assuming for the sake of argument that § 12-22-21(4) applies to a surviving spouse's claim for an "elective share," the condition otherwise described in that statute is not met here. The probate court entered two preliminary orders, an order granting an extension of time for Korie to petition for an elective share and an order stating that Korie was entitled to an elective share. As noted, the latter order did not adjudicate the amount of that elective share but set a date on which the probate court would conduct a hearing to determine the amount of the elective share.

As also noted, a surviving spouse's elective share is determined through the application of a formula. Pursuant to the elective-share formula, a surviving spouse's elective share is "the lesser of (1) All of the estate of the deceased reduced by the value of the surviving spouse's separate

estate; or (2) One-third of the estate of the deceased." Ala. Code 1975, § 43-8-70(a). Based on the nature of the elective-share formula, determining a surviving spouse's right to receive an elective share of the estate requires the court considering the issue to determine the value of the share to which the surviving spouse is entitled. See also Ala. Code 1975, § 43-8-73(d) ("After notice and hearing, the court shall determine the amount of the elective share and shall order its satisfaction from the assets of the estate.").

But neither of the probate court's February 2012 orders determined the share, if any, to which Korie might be entitled. That is, they did not resolve Korie's claim for an elective share. Neither order compelled any payment, or denied any claim for payment, of any portion of the estate. Neither order represents "the decision" of the probate court "in [a] proceeding[] instituted to compel the payment of a legacy or distributive share" contemplated by the statute. Neither order was appealable as "the decision" of the probate court in the "proceeding[] instituted to compel the payment of a legacy or distributive share" under § 12-22-21(4). See, e.g., Dempsey v. Dempsey, 899 So. 2d 1272, 1273 (Fla. Dist.

14

1120848

Ct. App. 2005) (holding that an order determining entitlement to an elective share, but not the amount of the share, is a "nonfinal and nonappealable" order). See generally Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So. 2d 354, 361-62 (Ala. 2004) (holding that, where the amount of a monetary claim is at issue, a judgment that adjudicates liability, but not the amount of the claim, is not a final judgment); Banyan Corp. v. Leithead, 41 So. 3d 51, 54 (Ala. 2009) (noting that an appealable judgment is one that finally and conclusively adjudicates the substantive rights of the parties). As a result, the February orders were not appealable and, indeed, remained subject to revision by the probate court or, as in this case, by the circuit court upon proper removal of the administration of the estate. See Rule 54(b), Ala. R. Civ. P. See also Ala. Code 1975, § 12-13-12 (stating that the rules of practice in circuit courts generally are applicable in probate courts); Ala. Code 1975, § 12-11-40 (stating that the Alabama Rules of Civil Procedure generally are applicable in proceedings for the administration of estates removed to the circuit court).[6]

_____

[6]Rule 1(a), Ala. R. Civ. P., was amended effective January 1, 2013, to provide that, subject to certain exceptions, the

15

1120848

In contrast, the circuit court's eventual order dismissing Korie's petition fully adjudicated Korie's claim that she was entitled to receive an elective share of Woodie's estate, and that order is appealable. See Rogers v. McLeskey, 225 Ala. 148, 149, 142 So. 526, 527 (1932) (noting that order denying "right of homestead and exemption by the alleged widow of decedent, after she had filed an alleged dissent as widow from the will," was "final" and "appealable").

B.   Extension of Time to Exercise Right of Election

Korie next argues that the circuit court erred because it "failed to apply principles of equity as a basis to allow Korie additional time beyond the six-month limitation of § 43-8-73 to make a decision regarding taking an elective share."  Specifically, Korie argues that equity requires a court to allow an untimely filed claim for an elective share where:

> 1.  The surviving spouse was "ignorant" of her right
> to  dissent from the will and to claim an elective
> share;

Alabama Rules of Civil Procedure apply in probate court proceedings.  See Committee Comments to Amendment to Rule 1(a), effective January 1, 2013.

16

2.   The attorney for the estate did not inform the surviving spouse of her right to dissent from the will and to claim an elective share;

3.   The attorney for the estate did not "advise" the surviving  spouse to obtain independent counsel; and

4.   The surviving spouse filed her request for an extension of time nine days after the limitations period applicable to her request for an extension of time.[7]

Korie supports her argument by asserting the general principle that "'[t]he widow is a favorite of the law'" and

---

[7]Korie also states that "the denial of an elective share would impose an economic hardship upon" her, and Korie notes that she "worked as a waitress at a Mexican restaurant when these issues were before the circuit court." Although Korie's affidavit avers that she worked in a Mexican restaurant after Woodie's death, she made no averment that, and presented no other evidence that would support the conclusion that, "the denial of an elective share would impose an economic hardship upon" her.

Also, Korie concedes that Woodie left an investment account as a nonprobate asset and that the account was equally divided between her and Jonathan.  The record contains no information concerning the amount of the investment account. In his appellate brief, the personal representative describes the account as "very sizeable"; in Korie's reply brief, she "denies" that the amount she received from the account could be described as even being "sizeable," much less "very sizeable."  But the existence of the investment account and any impact it might have as to the matters at issue were not among the matters presented to the circuit court.  Thus, we will not consider those matters either. See, e.g., Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.").

17

1120848

that statutes governing dower rights should be liberally construed. Perrine's Ex'rs v. Perrine, 35 Ala. 644, 647 (1860). More specifically, she argues that the "liberality" of equity as to the rights of a widow "is reflected in the comments made by this Court" in Adams v. Adams, 39 Ala. 274 (1864), and in Steele v. Steele's Adm'r, 64 Ala. 438 (1879), both of which discuss the widow's right to dower, a common-law right the elective share has displaced.[8] Further, Korie references Ala. Code 1975, § 43-8-3, which states: "Unless displaced by the particular provisions of this chapter, the principles of law and equity supplement its provisions." And Korie refers to a few cases from other jurisdictions in which courts have applied principles of equity and allowed an untimely claim for an elective share. As discussed below, however, those cases are distinguishable.

_____

[8]As the Commentary to § 43-8-70 states:

"Under the common law, a widow was entitled to dower, which was a life estate in a fraction of lands of which her husband was seized of an estate of inheritance at any time during the marriage. Dower encumbers titles and provides inadequate protection for widows in a society which classifies most wealth as personal property. Hence states have tended to substitute a forced share in the whole estate for dower and the widower's comparable common-law right of curtesy."

18

1120848

As noted above, the elective share is a creation of the legislature, and the statutes creating the "right of election" also establish the conditions applicable to the exercise of that right. See, e.g., § 43-8-70(a) ("If a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share of the estate."); Ala. Code 1975, 43-8-71 ("The right of election of the surviving spouse may be exercised only by the surviving spouse during his lifetime."). Those conditions include filing a claim for an elective share or a request for an extension of time within the limitations period imposed by § 43-8-73(a).

Provided a request for an extension of time is timely filed, § 43-8-73(a) gives the trial court discretion to "extend the time for election for cause shown." As one court has explained:

> "The elective share statute is like a statute of limitations in that it delineates a specified period of time during which a party must act. However, the statute is more explicit than a 'statute of limitations' in that it expressly permits the court to extend the election period, whereas a statute of limitations is silent on the rights of the court to extend any such period. Further, the elective share statute gives explicit instructions to the court regarding when it may act, limiting this ability to '[b]efore the time for election has expired.' [N.J. Stat. Ann. §] 3A:38A-5(a)."

19

McKay v. Estate of McKay, 184 N.J. Super. 217, 222-23, 445 A.2d 473, 475 (Law Div. 1982), aff'd, 188 N.J. Super 44, 455 A.2d 1142 (App. Div. 1983); see also, e.g., Moise v. Moise's Ex'r, 302 Ky. 843, 845, 196 S.W.2d 607, 608 (1946) ("[T]he Court ... is without power to grant additional time to determine whether or not to renounce, unless application be made therefor within the time prescribed by Statute for the election."); see also Bunker v. Murray, 182 Mass. 335, 336, 65 N.E. 420, 421 (1902)("The statute has pointed out the way for an extension of time, and the probate court has no power, after the expiration of six months from the first probate of the will, to allow the widow to waive the provisions of the will, or to claim such portion of his estate as she would have been entitled to if her husband had died intestate."); In re Estate of Zweig, 145 Misc. 839, 856-57, 261 N.Y.S. 400, 419-20 (Sur. Ct. 1932)("[T]he statute has granted surrogates a discretionary power to extend the period for making the election only before the expiration of the initial statutory six months allowed for the purpose. On fundamental principles of statutory construction, inclusio unius est exclusio alterius. No power is given for an extension after the

expiration of the time, and in the absence of such a grant of power, it cannot be held to exist. ... [T]he court is powerless to grant relief after the expiration of the initial six months' period in the absence of a demonstration of active fraud having been practiced upon the surviving spouse.").

The McKay court further noted that

"[p]laintiff did not apply to the court for an extension of time to elect, as she should have under [N.J. Stat. Ann. §] 3A:38A-5(a). Even assuming that the information she needed to make a reasoned decision was not made available within the six-month period (a situation which plaintiff did not convey to the executor), the burden is on the surviving plaintiff/spouse to apply for an extension of the period for 'good cause' within the six months. Id. If plaintiff believed she lacked sufficient information, she should have, for that reason alone, made application to the court for an extension. Plaintiff's argument that she was not provided with sufficient information could be construed as 'good cause' under the statute, enabling her to apply for an extension. The Legislature anticipated such circumstances and provided a procedure with which plaintiff did not comply.

"....

"The denial of plaintiff's motion may seem harsh in that she was apparently prepared to make an election against the Will only one month after expiration of the time period. However, it is a legislative prerogative to amend a statute, not the court's."

1120848

McKay, 184 N.J. Super. at 223-24, 445 A.2d at 475-76; see also In re Estate of Rehfuss, 65 Wis. 2d 409, 414, 222 N.W.2d 617, 620 (1974)("The power granted to the trial court [as to an extension for filing an election] by [Wis. Stat. Ann. §] 861.11(3) ... could not be exercised because the one-year period had expired."); In re Estate of Faller, 407 Pa. 73, 77, 180 A.2d 33, 35 (1962) ("[One-year] time requirement [for election] is mandatory and cannot be extended except upon proof that the surviving spouse, by actual fraud, has been induced or misled to delay the election.").

Likewise, in In re Estate of Hartt, 75 Wyo. 305, 295 P.2d 985 (1956), Pearl Hartt, the surviving spouse, filed an

> "action in equity ... to permit [her] to dissent from the will [of her deceased husband]. ... She alleged in substance that she did not know of her right to elect to take against the will of the deceased; that she did not know the extent and value of the estate; that she was ignorant of the impact of Federal taxes on the estate; that she was not advised of her rights by the executors of the estate in whom the testator and plaintiff had reposed trust and confidence, nor was she advised of her rights by any one else."

75 Wyo. at 329, 295 P.2d at 989. The pertinent Wyoming statute required the surviving spouse to file his or her election within six months after the probate of the deceased

22

spouse's will. Pearl did not file her equity action until 15 months after the probate of her husband's will. Nevertheless, the trial court granted Pearl's petition, and the personal representative and one of the decedent's heirs appealed.

The Wyoming Supreme Court surveyed the law of other jurisdictions concerning whether equity might be invoked to provide relief under such circumstances, and noted:

> "The decisive decisions on the point, pro and con, are absolutely irreconcilable, although we have diligently sought some ground on which they could be reconciled. ... There are but few points on which the courts are generally agreed, namely, when fraud and the like appears by reason of which the widow has been silent, relief may be granted, for fraud vitiates everything. No fraud or the like appears in the case at bar. So, too, the courts hold that if the widow wants to change her mind during the period fixed in the statute, she may do so. ... There also may be very exceptional circumstances under which the time fixed by statute is not controlling."

75 Wyo. at 330-31, 295 P.2d at 990.

The Hartt court noted that some courts had concluded that equity could intervene to allow an untimely election because those courts adhered to the common-law rules concerning election. In contrast, as to those courts that had rejected the intervention of equity, the Hartt court stated that that

23

"class of cases seems to have two sources. In the first place we have the general rule that mandatory statutes must be obeyed and that the courts have no right to make a law contrary to that prescribed by the legislature. In the second place the beginning at least of considering statutes mandatory in cases such as before us is clearly found in the fact that such statutes were enacted for the express purpose of remedying the evils of the law of election in such cases under the common law. ... The earlier cases are clear on the subject. Stephens v. Gibbes, 14 Fla. 331, 357, 358 [(1873)], discusses the common law at some length. It points out that at common law no election was necessary except in certain cases; again that there was no limit of time in which an election by a widow was necessary to be made. The court states that any one who knows anything about the history of election in such cases knows the mischief that existed at common law, and that the enactment of statutes by the legislature on the subject 'originated in the desire and necessity for curing the evils incident to the common law rules upon these subjects.'"

75 Wyo. at 333, 295 P.2d at 991; accord Hilliard v. Bindford's Heirs, 10 Ala. 977, 991 (1847) ("The evil intended to be obviated" by the legislature's enactment of a statutory time limit as to the assertion of the widow's right to receive her dower interest "was the difficulty which previously existed of ascertaining when and how an election was to be made by her. ... This seems to have been the only change made by the statute in the existing law -- a fixed, a definite term was introduced within which she is compelled to signify her

24

dissent to the will; and if this is not made, it then, if any provision [in the will] is made inconsistent with her right under the statute, becomes obligatory on her.").

The Hartt court further reasoned:

"[T]he courts have held that a statute like ours fixing the time in which a surviving spouse must dissent from the will has been held to be a statute of limitation, and it is said that a court of equity may not give relief from such a statute no matter what hardship may be created, unless, perhaps, it be by reason of fraud or the like. In re Zweig's Will, 145 Misc. 839, 261 N.Y.S. 400 [(Sur. Ct. 1932)]. Thus the Colorado Supreme Court, which, as noted, held the failure to elect to be conclusive on the rights of the widow, in the later case of In re Stitzer's Estate, 103 Colo. 529, 87 P.2d 745, 120 A.L.R. 1266 [(1939)], designates the statute as a statute of limitation. Other cases to the same effect are Schweer v. Schweer, Mo. App., 86 S.W.2d 969 [(1935)]; Ludington v. Patton, 111 Wis. 208, 86 N.W. 571 [(1901)]; In re Zweig's Estate, 145 Misc. 839, 261 N.Y.S. 400; Akin v. Kellogg, 119 N.Y. 441, 23 N.E. 1046 [(1890)]. ...

"....

"Numerous cases announce the rule that under a statute similar to ours, the surviving spouse must dissent from the provisions of the will within the time fixed by statute, excepting cases involving fraud or the like. ...

"....

"In Stearns v. Stearns, 103 Conn. 213, 130 A. 112, 116 [(1925)], the court stated:

25

"'The statute is too plain to require construction. The will did give to the husband a portion of the estate of the testatrix. The husband made no election in writing as to whether he would accept or reject the provisions of the will in lieu of his statutory share as husband of the testatrix. The terms of this statute are explicit, and however unfortunate the result, the facts of record bring the case exactly within the statute and require us to hold that the husband "shall be taken to have accepted the provisions of the will, and shall be barred of said statutory share."'

"[In] In re Daub's Estate, 305 Pa. 446, 157 A. 908, 911, 81 A.L.R. 735 [(1931)], the court stated:

"'No matter how hard the decision in a particular case may seem to be, if a widow does not make her election within the statutory period, the courts, because of that act, must declare that she is deemed to have made an election to take under the will, for this "statute here fixes the time as definitely as does that relating to taking appeals, and both are mandatory. ... In view of the positive provisions of the statute we are not persuaded that relief could be granted ex gratia." In re Minnich's Estate or Sherwood's Estate, 288 Pa. 354, 358, 136 A. 236, 237 [(1927)].

"'A different conclusion will, of course, be reached in cases where actual fraud has been committed to obtain the widow's election, and no laches appears, for fraud vitiates everything it touches.'

"....

26

"Notwithstanding [a] great array of authorities[] in which the courts have considered the statutory provisions to be mandatory, counsel for respondents contend that we should follow the common law rule of election, in which time is not considered to be of the essence, and that equity will give relief. We have already seen that Stephens v. Gibbes, 14 Fla. 331 [(1873)], and Collins v. Carman, 5 Md. 503 [(1854)], followed by another Maryland case, hold the contrary. Perhaps the leading case on the subject before us, because of the comprehensive discussion of all the phases on this subject, is In re Zweig's Estate, 145 Misc. 839, 261 N.Y.S. 400. Counsel for respondents say that the case is distinguishable because the probate court of New York has no equitable jurisdiction. But it has jurisdiction, by statute, to extend the time within a limited period, which itself seems to be equitable in its nature. Further the court expressly considers the subject of whether or not a court of equity can give relief after the expiration of the time fixed by statute, and states that courts of equity are powerless to vary the direct mandate of legislative enactments as are courts of law, and that this has been determined on innumerable occasions."

75 Wyo. at 339-43, 295 P.2d at 995-96 (emphasis added; emphasis omitted).

The Hartt court concluded that it was "constrained to hold that our statute hereinbefore quoted is mandatory, and that [Pearl] Hartt had no right to dissent from the will after the expiration of six months mentioned in the statute." 75 Wyo. at 346, 295 P.2d at 998. And, of particular import to

27

1120848

our consideration of Korie's arguments in the present case,

the Hartt court noted that Pearl

"contends that the executors should have advised her
of her rights. It is stated in 90 C.J.S., Trusts,
§ 247, p. 225 that: 'By accepting the trust, a
trustee (executors are trustees) becomes bound to
administer it, or to execute it, in accordance with
the provisions of the trust instrument and the
intent of the settlor.' In determining his duty,
the intention of the testator is of controlling
importance. ... Hence the first and primary duty
of the executors in this case was to see that the
intent of the testator was carried out. It was not
their duty, in fact it would have been a violation
of their duty, to do anything that would nullify the
provisions of the will. True the executors had no
right to defraud the widow or by chicanery induce
her not to dissent from the will. But no fraud or
chicanery is shown herein. The court in Stephens v.
Gibbes, 14 Fla. 331, 356 [(1873)], stated:

"'Neither the executors, the other
devisees or legatees, not the creditors,
are in any legal sense under an obligation
to give the widow notice of the provisions
of the will. The law presumes her
knowledge of the will and its contents as
well as her knowledge of her right of dower
and its nature, and she is bound to know
that if she omits for the space of one year
to signify her dissent, she cannot claim
dower.'

"That, of course, applies as well to her right
to take under the statute or descent and
distribution."

75 Wyo. at 348, 295 P.2d at 999; see also, e.g., In re Estate

of Pritchard, 37 Kan. App. 2d 260, 272-73, 154 P.3d 24, 33

28

(2007) (holding that, absent a statutorily created obligation, a personal representative or his or her attorney has "no duty ... to inform or give notice to [the surviving spouse] of [his or] her homestead and/or spousal rights").[9] See also Allen v. Guthrie, 469 So. 2d 204, 205-06 (Fla. Dist. Ct. App. 1985) ("A surviving spouse has no right to an elective share absent a timely election to take that share. Order and finality in the administration of estates, as is reflected in [the elective-share statute's] time limits, are paramount concerns;

---

[9]In some states, the personal representative is statutorily required to disclose the financial status of the estate to the surviving spouse where the surviving spouse requests such disclosure. See, e.g., Tenn. Code Ann. § 31-4-103. In such states, where the spouse requests disclosure and the personal representative fails timely to provide the information required by the statute, "the statutory time for filing a dissent will not bar the widow from making that election." Merriman v. Jones, 620 S.W.2d 88, 91 (Tenn. Ct. App. 1981). Alabama has no such requirement as part of its elective-share statutory scheme.

Also, we note that Korie is not arguing that the attorney for the estate had a legal duty to inform her that she had a right to claim an elective share; Korie states in her reply brief that "that argument has actually never been made." Nevertheless, Korie states that this Court should "recommend" that counsel for the estate inform the surviving spouse of his or her right to claim an elective share "in every instance. ... A counsel for the estate should not favor the individual rights of the person named as administrator of the estate." We must decline Korie's invitation.

and failure to elect within the period prescribed by the Legislature bars a claim."); Downes v. Downes, 388 Md. 561, 578, 880 A.2d 343, 353 (2005) ("When [the] period [for filing a request for an extension of time] expires, the authority to extend it expires as well. The same underlying principles apply: there has been no retreat from the principle that the ability to renounce a Will in favor of a statutory share is to be strictly construed and the law still favors the expeditious administration and early settlement of Estates." (citation omitted)); In re Estate of Kruegel, 551 N.W.2d 718, 719 (Minn. 1996) (affirming the denial of an untimely filed "notice of election" where the surviving spouse failed to timely request an extension of the time in which she must elect and rejecting surviving spouse's argument that equity should relieve her of the pertinent time limitations because she had been "actively engaged in negotiations with the estate as to how the distributions should be made"); In re Estate of Hesemann, 214 Neb. 842, 336 N.W.2d 568 (1983) (affirming the denial of the surviving spouse's untimely claim for an elective share where the surviving spouse failed to establish that the attorney for the estate had made any material

30

misrepresentation in response to the surviving spouse's inquiries concerning his right to file a claim for an elective share); Simpson v. Sanders, 314 S.C. 413, 445 S.E.2d 93 (1994)(requiring strict compliance with elective-share statute and denying untimely petition); and In re Estate of Lingscheit, 387 N.W.2d 738, 741 & n. (S.D. 1986) (holding that the trial court should have denied the surviving spouse's petition for an elective share where it was filed three weeks after the pertinent time limit and she "could have requested an extension before her time expired" but did not).[10]

As to the Alabama cases cited by Korie in support of her argument, we first note that in Adams this Court addressed the issue whether a widow who had timely filed a claim for dower could prosecute that claim even though she had accepted money that had been bequeathed to her in her deceased husband's will: "Can she, while retaining all the property bequeathed to her ..., recover dower in the probate court?" 39 Ala. at 279. The Adams Court concluded that she could not. In so doing, the Court noted that the widow had "elected" to receive

---

[10]Estate of Lingscheit was superseded, in part, on other grounds, as recognized in In re Estate of Geier, 809 N.W.2d 355, 358 (S.D. 2012).

what the will provided for her by accepting property pursuant to the terms of the will. But, the Court continued:

> "Although she may have made an election, she is not concluded by it, if made in ignorance of the circumstances calculated to influence her choice. But we are not to infer from the expression that she is not concluded by an election unadvisedly made, that she can treat her election as a nullity, while she retains all that she may have received by virtue of the election. On the contrary, it is manifest justice, that she should avoid the election, only upon a restoration of what she has received. Such is also the teaching of the cases upon the subject. Having made an election, she must abide by it as long as she retains the legacy which she has received. If she has been defrauded, or if she has made an unadvised election, her remedy is in equity, to obtain relief upon the restoration of the benefit she has taken under the will."

39 Ala. at 280 (citations omitted).

The foregoing discussion from Adams is of no avail to Korie. Unlike Korie, the widow in Adams timely asserted her right to dower. The issue in Adams was not whether equity permitted a widow to pursue an untimely claim for her statutory right to "take against the will," i.e., her claim for dower, but whether equity permitted a widow to revoke her decision to receive the property bequeathed her under the will and to pursue a timely filed claim to take against the will. As the Adams Court noted, equity did permit such a revocation,

32

provided the widow "restor[ed] ... the benefit she has taken under the will." But Adams does not stand for the proposition that equity allows a widow to pursue an untimely claim for the statutory rights granted to her.[11]

As to Korie's argument from Steele, in which this Court held that the widow there was not entitled to belatedly assert her right to dower, Korie contends that this Court impliedly recognized that equity may excuse an untimely election. She draws her conclusion from the following statement by the Steele Court:  "[I]f there be an extension of time within which to elect, under an equitable construction of our statute, neither the pleadings nor proofs in the present record justify its exercise."  64 Ala. at 461.

The language quoted by Korie may be read as implying that equity can be used to evade the statutory time limits

---

[11]Also, allowing a widow to revoke the exercise of her statutory rights and to accept the provisions of the deceased spouse's will is materially different than allowing a surviving spouse to untimely assert her statutory rights and thereby disrupt the provisions of the deceased spouse's will. In the former circumstance, the surviving spouse is not thwarting any purpose expressed by the legislature. In the latter circumstances, however, the surviving spouse would be thwarting the legislature's purpose as to the timely assertion of the surviving spouse's rights, and, unlike the former circumstance, the surviving spouse would also be thwarting the execution of the will according to its terms.

applicable to the exercise of a surviving spouse's statutory rights vis-à-vis the deceased spouse's estate. But a closer reading of <u>Steele</u> reflects that Korie's claim is nevertheless unavailing. The <u>Steele</u> Court stated:

> "The statute law of this State provides that the widow, for whom provision has been made by the will of her deceased husband, may dissent from such provision, and 'take her dower in the lands, and of the personal estate such portion as she would have been entitled to in case of intestacy.' Code of 1876, § 2292. 'Such dissent must be made in writing, and deposited within one year from the probate of the will,' &c. -- Ib. § 2293. <u>It would seem that the language of this statute is imperative, and, to be availing, the dissent must be deposited within one year after the probate of the will.</u>"

64 Ala. at 461 (emphasis added).[12] The <u>Steele</u> Court continued:

> "But, <u>if there be an extension of time within which to elect, under an equitable construction of our statute, neither the pleadings nor proofs in the present record justify its exercise.</u> There is no averment, and no attempt at proof, that Mrs. Steele was at any time <u>ignorant of any fact or circumstance, calculated to influence her choice.</u> Neither is it shown, or even possible, that she can,

_____

[12]The <u>Steele</u> Court referenced <u>Adams</u> and acknowledged that equity permitted a widow to revoke "'an election ... made in ignorance of the circumstances calculated to influence her choice,'" "'upon restoration of what she has received.'" 64 Ala. at 461 (citations omitted). But, as noted above, <u>Adams</u> did not concern the issue whether a widow could pursue an untimely filed claim.

by restoration, place the property of the estate in statu quo. More than twenty years ago, she was in possession of the property devised to her by the will, and it is not shown she has ever been disturbed in its enjoyment. It is clear that no adverse claim was asserted during the administration of the executor, which lasted more than thirteen years. She has no right now to dissent from the provisions of the will, and claim dower in the lands of which her husband died seized. -- See Collins v. Carman, 5 Md. 503 [(1854)]."

64 Ala. at 461-62 (emphasis added).

In turn, in Collins v. Carman, 5 Md. 503 (1854), which the Steele Court cited in support of the foregoing discussion, the surviving spouse, who was insane, died four years after her husband. The administrator of her estate attempted to belatedly assert the deceased wife's right to dower, i.e., to take against the will. The trial court rejected the claim, and the Maryland Court of Appeals affirmed its judgment. The Collins court noted that "[t]he law admits of no excuse for a failure to renounce. ... To acquire ... rights in opposition to the will, the law makes the renunciation [of the will] a necessary act." 5 Md. at 530-32. See generally 2 John Norton Pomeroy, Equity Jurisprudence § 513a (5th ed. 1941) ("In very many of the states statutes have been passed which prescribe definite periods of time within which the right of election

between dower and a provision made by will must be exercised. [... If dissent is not indicated within the prescribed time and in the manner required by law, the widow is conclusively presumed to have elected to take under the will, no matter how hard the decision in a particular case may seem to be. This is so except in cases of fraud, and perhaps under some other exceptional circumstances.]" (bracketed material added by Spencer W. Symms, ed.)).

Also, as to any analogy that might be drawn from our precedents regarding dower, we find it instructive that in Hilliard, supra, we stated that "the evil intended to be obviated" by the legislature's enactment of a statutory time limit as to the assertion of the widow's right to receive her dower interest

> "was the difficulty which previously existed of ascertaining when and how an election was to be made by [the widow]. ... This seems to have been the only change made by the statute in the existing law -- a fixed, a definite term was introduced within which she is compelled to signify her dissent to the will; and if this is not made, it then, if any provision [in the will] is made inconsistent with her right under the statute, becomes obligatory on her."

10 Ala. at 991. Also, in McGhee v. Stephens, 83 Ala. 466, 3 So. 808 (1888), this Court noted that the statutory procedures

enacted regarding dower claims were "intended to provide for a speedy and summary election" and that "failure to dissent within one year from the probate of the will bars [the widow's] right of dower." 83 Ala. at 469, 3 So. at 810. See also Sanders v. Wallace, 118 Ala. 418, 426, 24 So. 2d 354, 356 (1898)("We are of opinion, that the widow by her failure to dissent from the provisions of her husband's will, in the time and manner required by the statute, is barred of her right of dower in her husband's lands ...."); Vaughan v. Vaughan's Heirs, 30 Ala. 329, 333 (1857) (holding that surviving spouse's "failure to signify her dissent from the will, within one year after its probate, is a bar to her right of dower").

As it did by adopting a time limit for the assertion of a dower claim, the legislature adopted a limitation period for the surviving spouse's assertion of his or her right to elect against the will. There is no indication that the purposes of the time limitation as to the right of election are any different from the purposes for a dower claim, namely certainty as to the assertion of the surviving spouse's rights that could adversely affect the will and efficiency as to the administration of the estate. To allow an untimely claim

37

would be directly contrary to those purposes and unwarranted in the absence of "fraud or the like." The circuit court in the present case found "no fraud or undue influence." The lack of justification for allowing an untimely claim under such circumstances is bolstered by the fact (1) that a surviving spouse may timely request an extension of time until he or she can obtain information concerning the assets composing the estate, see Ala. Code 1975, § 43-8-73(a) (providing that a timely filed request for an extension of time may be granted "for good cause shown") and (2) that the legislature has limited any prejudice the surviving spouse might suffer from asserting his or her right of election based on insufficient information. Ala. Code 1975, § 43-8-73(c) ("The surviving spouse may withdraw his demand for an elective share at any time before entry of a final determination by the court.").

In addition to Korie's reliance on the above-referenced Alabama cases, she also relies on a few cases from other jurisdictions that have allowed a surviving spouse to pursue an untimely filed claim for an elective share. We find those cases either to be distinguishable from the present case or

simply to be contrary to the much greater and more compelling body of authority described above.

To take one example, Korie cites In re Estate of Bersin, 98 Ohio App. 432, 129 N.E.2d 868 (1955). That decision, however, was based on the failure of certain statutory prerequisites (not present here) to the right of a surviving spouse to make an elective share against the decedent's will.

Similarly, Korie discusses Mann v. Peoples-Liberty Bank & Trust Co., 256 S.W.2d 489 (Ky. 1953). In Mann, a wealthy testator had a complicated estate plan, which he failed to revise after the birth of his youngest child:

> "The possible effect of this pretermission on the powers of the executors and trustees under the will has resulted in the widow, Frances S. Mann, refusing to qualify as either co-executor or co-trustee until it can be determined whether it would be better for both herself and her children to renounce the will ... and elect to take her dower and distributable share of her husband's estate. Ordinarily, this statutory power of renunciation must be exercised within a year of the probate of the will which occurred February 5, 1952, but the chancellor granted her 'to any time within two months after the determination of her rights in this estate by our courts by a judgment which shall have become final by expiration of time for appeal or affirmance on appeal.' Where an intelligent election is impossible, as we believe it is in the case at bar, the chancellor has the power to extend the time for making an election, if requested to do so within the one-year period."

256 S.W.2d at 492 (citations omitted; emphasis added).

Mann too is distinguishable. In the present case, the record does not reflect that it would have been impossible for Korie to make an intelligent election absent some construction of the will, nor did she timely request an extension of time within which to file her elective-share claim so that she could obtain whatever information she thought she might need.

Korie notes that an accurate inventory and accounting as to the financial status of the estate would have enabled her to make an "intelligent choice" as to whether to claim an elective share. Although that is true, the legislature has not required that an inventory and accounting be filed as a precondition to triggering the time periods pertinent to the elective share. And, as noted above, Korie could have filed a timely request for an extension of time and concurrently requested that the court order an accounting so that she could make an informed decision as to whether to file an elective-share claim. See § 43-8-73(a) ("The court may extend the time for election for cause shown by the surviving spouse before the time for election has expired." (emphasis added)); Ala. Code 1975, § 43-2-530 (providing that the court may require

the personal representative to file an accounting "notwithstanding any provision in any will or other instrument to the contrary"). Korie did not seek financial information concerning the estate, however, until after her right of election was time-barred.[13]

Korie also asserts that she was unaware of her right of election. But, as the Hartt court discussed, such a claim is insufficient to entitle the surviving spouse to relief. As another court has stated:

> "In this case the widow pleads that she was illiterate, and ignorant of the law and of her rights; that she did not know that, by failing to renounce her husband's will within a year of its probate, she was thereby accepting it and electing to take under it; that the provisions made for her

---

[13]In her argument, Korie references the personal representative's failure to file an inventory until after he was ordered to do so by the probate court, and she also takes issue with the contents of the inventory the personal representative ultimately filed with the circuit court. As noted above, however, Woodie's will exempted the personal representative from the requirement of filing an inventory. Thus, the personal representative had no legal obligation to file an inventory until ordered to do so by the court. And no such order was requested until after the expiration of the time in which Korie might claim an elective share. Nor is there any evidence indicating that the personal representative actively thwarted any effort Korie might have made to obtain information about the assets and liabilities of the estate so that she could evaluate whether it might be in her interests to file a timely claim for an elective share.

and the infant by the will were less than she was entitled to under the statute; and that the whole of her husband's estate was less than, under the statutes, she, as widow, and her three infants, would have been entitled to have set apart to them during her life and their minority. The maxim, 'Ignorance of the law excuses no one,' has not been applied in this state with the rigor that it has been elsewhere. ... [But] [t]his court has never held that one's nonaction, through ignorance of the law, could extend or enlarge his legal rights. Such a practice would be not alone to put a premium upon ignorance, but would be an inducement to perjury, as well as to unsettle and render insecure titles which the statute had aimed to fix as of a definite period, and by not uncertain evidence."

Logsdon v. Haney, 25 Ky. L. Rptr. 245, 245, 74 S.W. 1073, 1073 (1903); see also, e.g., Shelton v. Sears, 187 Mass. 455, 460, 73 N.E. 666, 668 (1905)("The only excuse offered for her inaction is that she was ignorant of the law, but this is not sufficient in equity, any more than at law, to overcome the express limitation fixed by statute within which she must act or be forever barred." (citation omitted)).

Based on the foregoing, we conclude that the circuit court correctly rejected Korie's untimely petition for an elective share. The judgment of the circuit court is affirmed.

1120848

AFFIRMED.

Moore, C.J., and Bolin and Main, JJ., concur.

Bryan, J., concurs in the result.